### UNITED STATES v. ELLIOTT et al.

(Circuit Court, E. D. Missouri, E. D.    July 6, 1894.)

COMBINATIONS IN RESTRAINT OF INTERSTATE COMMERCE—INJUNCTION.

A combination whose professed object is to arrest the operation of the railroads whose lines extend from a great city into adjoining states until such roads accede to certain demands made upon them, whether such demands are in themselves reasonable or unreasonable, just or unjust, is an unlawful conspiracy in restraint of trade and commerce among the states, within the act of July 2, 1890, and acts threatened in pursuance thereof may be restrained by injunction, under section 4 of the act.

This was a suit by the United States against M. J. Elliott, George B. Kern, Eugene V. Debs, George W. Howard, L. R. Rogers, Sylvester Kelliher, the American Railway Union, and others, to restrain violations of the act of July 2, 1890 (26 Stat. 209). Complainants moved for a preliminary injunction.

William H. Clopton, U. S. Atty.

THAYER, District Judge (orally.)    The unusual character of the bill filed by the government renders it proper that the court should state briefly the reasons that have influenced its action in granting a part of the relief prayed for therein.

The act of congress approved July 2, 1890 (26 Stat. 209), entitled "An act to protect trade and commerce against unlawful restraints and monopolies," declares in its first section that:

"Every contract, combination in the form of trust or otherwise, or conspiracy in restraint of trade or commerce among the several states or with foreign nations, is hereby declared to be illegal. Every person who shall make any such contract or engage in any such combination or conspiracy shall be deemed guilty of a misdemeanor and on conviction thereof shall be punished by fine not exceeding five thousand dollars or by imprisonment not exceeding one year or by both said punishments, in the discretion of the court."

Ordinarily it is neither lawful nor expedient for a court of equity to award an injunction to prevent the doing of acts that are in themselves crimes.    The regular course of judicial procedure requires that persons accused of crime should be prosecuted by information or indictment, and not otherwise.    There are, however, well-established exceptions to this rule.    When a criminal act is threatened, which is liable to occasion irreparable injury to private persons, or which would give rise to a multitude of suits at law to redress the wrong, if committed, a court of equity may issue an injunction, at the instance of an individual, against parties who threaten to commit the wrong.    But the court is not called upon, in this instance, to consider whether the proceeding falls within the ordinary jurisdiction of a court of equity.    By the fourth section of the act of July 2, 1890, which is above referred to, congress has declared that:

"The several circuit courts of the United States are hereby invested with jurisdiction to prevent and restrain violations of this act; and it shall be the duty of the several district attorneys of the United States in their respective districts under the direction of the attorney general to institute proceedings in equity to prevent and restrain such violations. Such proceedings

> may be by way of petition setting forth the case and praying that such violation shall be enjoined or otherwise prohibited. When the parties complained of shall have been duly notified of such petition the court shall proceed as soon as may be to the hearing and determination of the case; .and pending such petition and before final decree the court may at any time make such temporary restraining order or prohibition as shall be deemed just in the premises."

This section of the act makes the jurisdiction of the court clear over the parties and subject-matter, if the bill now before the court, which has been exhibited with the sanction of the attorney general, shows the existence of a conspiracy among the defendants to restrain trade or commerce among the several states, and that acts have already been done or threatened by the several defendants in furtherance of the alleged conspiracy. Congress has seen fit, on grounds of public policy, to authorize the law officers of the government to appeal to the courts of the United States by a bill in equity filed in behalf of the people of the United States, to arrest, by writ of injunction or prohibition, the commission of acts which are designed to obstruct the free. flow of commerce between the states, and no one can doubt the power of congress to confer such authority. From the very foundation of the government, it has been accepted as a proposition which admitted of no controversy that the right to regulate commerce among the several states, and to pass laws to protect commerce of that character, pertained to the general government, and that its power in that respect was plenary and paramount.

An examination of the bill which has been exhibited by the United States shows that it charges, in substance, that the various defendants named therein have combined and confederated among themselves to prevent several railroads named in the bill, whose lines radiate from St. Louis, and which are engaged, among other things, in interstate commerce, from conducting their customary business of transporting passengers and freight between points in this state and points in other adjoining states to which their several lines extend. The bill further charges that the several defendants named therein have combined and conspired to induce persons in the employ of said railroad companies to leave the service of their respective companies, and to prevent them from securing other operatives, the object of such conspiracy being to prevent said railway companies from hauling certain cars which are customarily used by them in the transaction of their business as interstate carriers of freight and passengers. The bill also charges the commission of divers and sundry acts by some of the defendants in furtherance of the objects of the aforesaid confederation. Among other things, it is alleged that certain of the defendants have issued orders to persons in the employ of the several railway companies, who act subject to their direction, whereby such employés are commanded and required to cease from operating trains of the respective railroad companies in whose service they are employed. It is also alleged that certain of the defendants named in the bill have asserted and threatened that they will tie up and paralyze the operations of each of said railway companies which refuses to

accede to certain demands made upon them, and that it is the purpose and object of the defendants so conspiring, and who have made such threats, to so obstruct and cripple said railroad companies as to prevent them from performing their duties as common carriers of freight and passengers between points in the several states to which the lines of such roads extend.    It is also charged in the bill, in substance, that it is the purpose and object of the defendants who are engaged in the aforesaid conspiracy to secure to themselves the entire control of interstate commerce between the city of St. Louis and points in other states to which the lines of the several railroad companies mentioned in the bill extend, and to restrain and prevent the persons owning said roads from exercising any independent control thereof in the transaction of interstate business.    The court thinks it manifest that the allegations of the bill, which have thus been very imperfectly stated, show the existence of a conspiracy in restraint of trade and commerce among the several states, within the language and the fair intent and meaning of the act of July 2, 1890.   A combination whose professed object is to arrest the operation of railroads whose lines extend from a great city into adjoining states, until such roads accede to certain demands made upon them, whether such demands are in themselves reasonable or unreasonable, just or unjust, is certainly an unlawful conspiracy in restraint of commerce among the states.    Under the laws of the United States, as well as at common law, men may not conspire to accomplish a lawful purpose, by unlawful means.    Pettibone v. U. S., 148 U. S. 197, 13 Sup. Ct. 542;  Com. v. Hunt, 4 Metc. (Mass.) 111.    The construction thus given to the act of July 2, 1890, is not a new construction.    It has already received the same interpretation in other circuits after full consideration,—particularly by the circuit court of the United States for the fifth circuit in the case of U. S. v. Workingmen's Amalgamated Council of New Orleans, 54 Fed. 994, and 6 C. C. A. 258, 57 Fed. 85.

The result is that this court, acting on the ground herein stated, will grant a preliminary injunction, restraining the defendants during the pendency of this suit, and until final hearing, from doing the acts threatened, in pursuance of the alleged conspiracy.