# CHARLESTON.

## STATE v. BALTIMORE AND OHIO RAILROAD CO.

### Submitted May 3, 1916.   Decided June 1, 1916.

1. INTOXICATING LIQUORS—*Offenses—Transportation of Liquors.*
     Chapter 13, Acts 1913, as amended by chapter 7, Acts 1915, ch. 32A, Code, Barnes' Handy Edition, does not expressly or impliedly inhibit common carriers from transportation of passengers carrying with them, in their own personal custody, care and control, packages of intoxicating liquors, labeled in accordance with the requirements of sec. 31 of said chapter.   (p. 532).

2. SAME.
     Section 7 of said chapter impliedly authorizes such transportation, by the use of terms from which legislative intent to do so is plainly inferable; and sec. 31 thereof, expressly recognizing

and excepting the common law right of a citizen to bring intoxicating liquors into the state, for his personal use, and prescribing the manner of doing so, without denying to him the use of any of the means of travel ordinarily available and employed, at the date of the passage of the act, impliedly authorizes the use of such methods of travel in the carriage of such liquors.  (p. 532).

3.  STATUTES—*Construction—Grant of Right.*

An express statutory grant of a right, power or privilege, or exception of a previously existing one, in the absence of any prescription of the method of exercise or enjoyment thereof, impliedly carries with it right to make use of all the ordinary methods and means of such exercise or enjoyment.  (p. 534).

4.  INTOXICATING LIQUORS—*Abatement of Nuisance—Injunction.*

A bill praying an injunction against transportation of persons so carrying intoxicating liquors, by a common carrier, unless such carrier, through its agents, servants and employees, has first ascertained by due diligence and caution and in good faith, that such liquors are not intended for use or disposition by such persons, contrary to law, and not charging the rendition of aid and assistance to any particular person in his violations of the prohibition laws, by the carrier so proceeded against, raises no question as to right in the state to enjoin such transportation as to particular individuals.  (p. 538).

5.  NUISANCE—*Public Nuisance—Abatement—Injunction.*

In the absence of a statute conferring it, equity has no jurisdiction to abate a public nuisance, either civil or criminal, at the instance of an individual or the state, not affecting or injuring the enjoyment of property or other personal rights.  Injunction is not a remedy for the enforcement of criminal laws generally.  (p. 536).

6.  INTOXICATING LIQUORS—*Abatement of Nuisance—Injunction.*

Under the authority to abate nuisances, conferred by secs. 14 and 17, ch. 32A, Barnes' Code, the injunction goes primarily against places in which the prohibition laws are habitually violated and incidentally against persons who maintain such places.  Such authority does not extend to violations of the prohibition laws generally or in ways other than those designated in said sections. Neither said sections nor any other law confers upon courts of equity, general power to govern the state by injunction, in so far as its laws pertain to the subject of intoxicating liquors.  (p. 537).

7.  NUISANCE—*Abatement—Injunction.*

In those instances in which injunction lies to prevent conduct amounting to a nuisance abatable by such remedy, it is limited

to unlawful acts and is not available as a means of prevention of
lawful acts.   Only so much of such conduct as is unlawful can
be restrained.   (p. 539).

(MASON, JUDGE, absent.)

Appeal from Circuit Court, Mineral County.

Bill in equity by the State against the Baltimore & Ohio
Railroad Company.   From a decree for plaintiff, defendant
appeals.

*Remanded.*

*A. Hunter Boyd, Frank C. Reynolds* and *Conley & John-
son,* for appellant.

*Fred O. Blue* and *Jno. T. Simms,* for the State.

POFFENBARGER, JUDGE:

The question presented by the record in this cause is
whether the State may restrain common carriers from allow-
ing passengers to carry suit cases, trunks or other containers
containing intoxicating liquors as unchecked personal bag-
gage, on the ground that the allowance of that privilege to
passengers enlarges the opportunity for violation of the con-
stitutional and statutory laws prohibiting the manufacture,
sale and gifts of such liquors.

It arises upon a final decree, reading in part as follows:
"It is therefore adjudged, ordered and decreed that the re-
spondent, The Baltimore & Ohio Railroad Company, be and it
is hereby enjoined and restrained from permitting the car-
riage or transportation as baggage in and on its passenger
trains running into or operating within the State of West
Virginia, and particularly within said County of Mineral,
or elsewhere within the jurisdiction of this Court, any suit
case, trunk or other container labeled as containing liquor.
It is further adjudged, ordered and decreed that in the event
such suit case, trunk or other container labeled as containing
liquor is found on a passenger train in West Virginia, the
same shall be removed at the next stopping point for such train
where there is a railroad agent in said State, and unless re-
moved by the person claiming the same, such suit case, trunk

or other container shall be placed in the hands of the station agent at such station and notice given to the Commissioner of Prohibition at Charleston, West Virginia, or to any of his officers or agents." This decree was entered after the overruling of a demurrer to the bill and two motions to dissolve the preliminary injunction, one made before, and the other after, the filing of an answer. As to issues of fact raised by the answer, no proof was taken.

The bill sets forth the prohibition policy of the state, made manifest by its constitution and statutes, and the statutory limitation upon the right to bring liquors into the state for personal use. The allegation recognizing this exception and purporting to give the limitation thereon reads: "And plaintiff further represents that her public policy, other than as to certain liquors for druggists for the special purposes and under regulations provided by law, as expressed by her laws, only permits the bringing of intoxicating liquors into her jurisdiction by the person who personally procures the same from the outside dealer and personally carries the same into plaintiff state, and only then when such intoxicating liquors are intended for the personal, lawful use of the person who has so purchased and is so carrying them into plaintiff state for his personal, lawful use, and not for the purpose of keeping, storing, selling or having for sale such intoxicating liquors; and, then, subject to the requirement that when the aggregate of such intoxicating liquors, so carried into plaintiff state by such person, for his lawful personal use, shall exceed one-half gallon in quantity that there shall be plainly printed or written on the side or top of the container of such intoxicating liquors, in large display letters, in the English language, the contents of the container or containers, and the quantity and kind of intoxicating liquors contained therein."

It avers knowledge on the part of the defendant, of the fact that many persons transport, and have been transporting, large quantities of such liquors into the state, by means of its trains, under the guise of personal baggage; that a large part, if not the largest part, of the liquors so brought into the state, is and has been brought in for the purpose of being here unlawfully kept, stored and sold, and the practice is continued

or permitted notwithstanding notice of the abuse or perversion of the privilege of such carriage has been brought to the attention of the defendant and protests made against allowance thereof, by the prosecuting attorneys and other officers charged with the duty of enforcement of the prohibition laws; that the defendant has not heeded protests of the owners and operators of coal, lumber and other industries against the permission of this privilege under which liquors are so brought into cities and towns, including mining and lumber towns, and sold and disposed of contrary to law; that the officers charged with enforcement of the prohibition laws have unavailingly brought to the attention of the defendant, such transportation and unlawfulness thereof, requested establishment of rules defining and limiting the quantity of such liquors passengers may carry as personal baggage, and charged discrimination in favor of persons carrying liquors in its passenger coaches and against passengers carrying other baggage and allowance of carriage of liquors as personal baggage in greater volume and weight than is permitted as to other articles so carried and permission of the same passengers, at extremely short intervals, to carry such packages in its coaches; that defendant, despite the information so given, continues the privilege so accorded to its passengers and has formulated no rules respecting the carriage of intoxicating liquors into the state in its coaches and its action and conduct are in aid and assistance to those who bring into the state such liquors for sale, keeping and storage contrary to law; that such conduct constitutes the defendant a common nuisance under the common and statute laws of the state; that a large number of persons, many of whom are of questionable character and standing, travel on defendant's cars between certain towns in Maryland in which liquors are sold and points in this state, carrying no other baggage than large quantities of liquors in containers, called paper cartons, with content labels on them, conforming to the statutory requirements; that such packages are not baggage; that the carriers of these packages seem to be "only incidental to this liquor baggage, their functions being the supervision and safe transportation thereof;" that George McCarty brought in 362 pints of beer,

weighing 360 lbs., July 5, 1915, Louie Viney 57 qts. of whiskey, 5 gals. of alcohol and 18 pints of beer, weighing 303 lbs., July 15, 1915, Jos. Bickos, 10 gals. of alcohol and 1 qt. of whiskey, weighing 175 lbs., August 16, 1915 and Chas. Viney, 55 pints of whiskey, and 24 pints of beer, weighing 155 lbs., Dec. 4, 1915, and that many persons transported into the state with liquors in their possession, by the defendant, have been arrested and convicted of unlawful sale, keeping and storage of the liquors so brought in.

The prayer of the bill is that the defendant, its agents, etc., be enjoined from permitting the carriage of intoxicating liquors as "personal baggage" in any of its passenger coaches, when the containers are so labeled as to disclose the character of the contents, unless the defendant, through its agents, etc., has first ascertained by diligence and caution and in good faith, that such liquors are not intended for unlawful use or disposition.

The answer specifically denies that the defendant transports or permits transportation of baggage as such containing intoxicating liquors; that any law of the state imposes duty upon it to prevent or regulate the carriage of intoxicating liquors in its trains by passengers, in their own possession and under their personal control; that it knows or can know, or is required by law to know, what was to be done with liquors so transported by its passengers; that the larger part of the liquors that have been, or are being so brought into the state, are brought in for the purpose of being unlawfully sold, kept or stored, so far as defendant knows; that it has any knowledge of the purpose for which they are so brought in; that it is under any legal obligation to prevent passengers from carrying liquors into the state or to determine the purposes for which they do so; that it has ever knowingly permitted the transportation of intoxicating liquors for unlawful purposes; that it is under any legal duty to perform the acts for the performance of which demands have been made upon it by the officers charged with enforcement of the prohibition law; that it has any right to refuse to carry a passenger because of any supposition as to the character of his business on the trip he desires to make; that it has any right to inquire as

to the character of any person who demands passage upon its road, provided he can be carried with safety to other passengers and without annoyance to them; that under the law of this state, passengers on a common carrier may not lawfully carry a package of intoxicating liquors labeled as the law requires; that its employees have in any case permitted passengers to carry personal belongings or so-called personal baggage to such an extent as to interfere with the comfort or safety of other passengers; and that the eighth and ninth paragraphs of the bill charging that persons of questionable character ship liquors over its road, as personal baggage, and merely accompany the packages to see that they are safely transported, and that certain individuals did, on certain dates, bring in large quantities of liquors over its road, are in any respect true. It is not alleged that the defendant ever carries such packages in its baggage cars, as checked baggage, or takes custody of them through its agents, in any way, but the answer denies that it does and avers that its regulations forbid carriage of liquor packages in that way. It admits, however, that passengers are allowed to carry in its coaches, in their hands and under their personal control, all such personal belongings and parcels as do not interfere with the safety and personal comfort of other passengers, and that such permission or privilege extends to passengers so carrying labeled packages of intoxicating liquors.

In neither the bill nor the argument, is it claimed that a common carrier may not lawfully transport or carry a citizen as a passenger, with a package of intoxicating liquors in his personal possession, for the purpose of taking it to his home for his personal use. On the contrary, such right is, at least, impliedly admitted in the bill. In oral argument, it was expressly admitted. It must be true, under a statute which expressly recognizes the right of the citizen to do so, provided he labels the package so as clearly to show its contents, when the quantity is more than one-half of a gallon. Sec. 31, ch. 13, Acts 1913, added by ch. 7, Acts 1915, sec. 31, ch. 32A, Code, Barnes' Handy Edition, makes it unlawful for any person to bring or carry into this state, or from one place to another within the state, even when intended for personal use, liquors

exceeding in the aggregate one-half of one gallon in quantity, unless there is plainly printed or written on the side or top of the suit case, trunk or other container, in large display letters, in the English language, the contents of the container or containers, and the quantity and kind of liquors contained therein. Sec. 7, ch. 13, Acts 1913, as amended by ch. 7, Acts 1915, deals with the right of the citizen to have, keep and use intoxicating liquors. It forbids such right in certain classes of places and then makes a saving in these words: ''Provided, however, that nothing contained in this section shall prevent one, in his own home from having and there giving to another intoxicating liquors when such having or giving is in no way a scheme or device to evade the provisions of this act.'' The bill does not challenge the right to carry a passenger with an unlabeled package of liquor in his possession, nor does the decree reach such a case. Both are directed against the carrying of labeled packages, even though labeled in strict conformity with the statute, and the decree denies the right of the carrier to carry any person with a package of intoxicating liquor, if its contents are disclosed by a label. But there is no suggestion in the bill that, in carrying such a passenger, without knowledge of purpose on his part to make any unlawful use of the contents, the carrier is carrying the liquor for hire in violation of the express terms of the statute. In the oral argument, it was admitted that, in doing so, there would be no criminal offense, if the liquors were properly labeled and proven to have been intended for personal use in the home. The only contention is that allowance of the privilege may be enjoined as to everybody, because it is frequently abused and enlarges the opportunities for violations of the prohibition laws.

The statutory exception of the right of the citizen to bring such liquors into the state for his personal use at his home, in a prescribed manner, and keep them there, is obviously the equivalent of a grant of the right. It existed before the statute, without restriction as to the manner of carriage. The statute does not take it away. It merely regulates it and, in so doing, expressly recognizes it. Nor does it prescribe or limit the mode of travel of those who see fit so to bring liquors in. Prior to the passage of the act, a citizen, in carrying them

in, might travel by any of the common carriers of passengers, by private conveyance or on foot. None of these means or agencies are denied him by any express provision of the statute, or any words in it from which intention to do so can be inferred. On the contrary, the words of sec. 7 indicate purpose to allow the use of common carriers for such travel. They are that ''No common carrier, for hire, nor other person, for hire or without hire, shall bring or carry into this state, or carry from one place to another within this state, intoxicating liquors for another, even when intended for personal use.'' This language is highly significant, in view of common knowledge of conditions and practices. For baggage personally carried by the passenger, common carriers were known not to make any charge. In the popular sense, if not, indeed, in the technical, packages carried in hand by passengers, were carried free by the transporting agency, carried without hire. As the fare for a passenger without baggage and for one with baggage, is exactly the same, and was so, at the date of the passage of the act, the baggage is carried free in a practical or popular sense. No article was carried free by a common carrier in any other sense. It is physically possible to carry articles free in other ways, of course, but common carriers did not do any other kind of free transportation for the public. Many other persons did. If it was not the legislative purpose to recognize and sanction this practice, in the case of passengers, carrying liquors, it would be very difficult to find any reason for the form of expression used, and it seems to have been adopted with care. It makes a clear classification of persons, distinguishing common carriers from all others. Why did not the legislature simply say no person or corporation should, for hire or without hire, carry liquors for another, if it intended no exception in favor of common carriers?

However this may be, there is a general rule of construction and interpretation, uniformly recognized and applied in all jurisdictions, to the effect that the grant or allowance of a privilege impliedly carries with it, in the absence of a limitation, all the means, methods, agencies and instrumentalities that are usually employed in the enjoyment or exercise there-

of, and perhaps also such additional ones as may be necessary or convenient. If a mode of exercise of the power, right or privilege is prescribed, it is deemed to be exclusive. But, if none is prescribed, the privilege carries right to use all appropriate and reasonably necessary means and agencies. *Rivanna Nav. Co.* v. *Alexander,* 3 Gratt. 20; *Fallsburg Co.* v. *Alexander,* 101 Va. 98. ''In the same way, when powers, privileges or property are granted by statute, everything indispensable to their exercise or enjoyment is impliedly granted also, as it would be in a grant between private persons.'' Endlich, Intr. Statutes, sec. 418. ''Wherever the provision of a statute is general, everything which is necessary to make such provision effectual is supplied by the common law and by implication.'' Lewis Suth. Stat. Con., sec. 504. ''Wherever a power is conferred by a statute, everything necessary to carry out the power and make it effectual and complete will be implied.'' 26 Am. & Eng. Ency. L. 614. ''The grant of a specific power or the imposition of a definite duty confers by implication authority to do whatever is necessary to execute the power or perform the duty.'' 36 Cyc. 1113.

If a railroad company cannot legally carry a passenger with a labeled liquor package in his possession, no other common carrier can do so. No steamboat could do so. No ferry could transport such a person across a river. No transfer omnibus, hack, cab, taxi-cab, or other common conveyance could carry him on the streets of a city or town. Nor could he employ a private conveyance to carry him. He would be compelled to walk or furnish his own means of conveyance, however great the distance might be. To obtain what the statute allows him to have, a citizen in the interior of the state might have to walk, or go by automobile, in a carriage or on horseback, a hundred or two hundred miles, and then be refused passage across a ferry. Surely the legislature never intended to grant the right, or except it as it existed at common law, and then deny all the usual and ordinary means and methods of the exercise thereof. It did not say so. By no express terms did it take any of them away or forbid their use. The act contains no word from which intention to do so can be inferred. It cannot reasonably be assumed it intended to allow the right

and take it away in the same breath. The rule of construction above adverted to forbids addition of such terms to the statute by the courts. In *Ex parte Emsweller,* decided at this term, we unanimously held that the right to bring in intoxicating liquors for personal use impliedly gave right to carry them on the public highways, as a means of getting them to the home for personal use there. The conclusion here adopted stands upon the same principle and, in addition thereto, the statutory exception of common carriers from the inhibition put upon all other persons from carrying liquors without hire. As that restriction does not go to them, they are by clear implication excepted from it, to the extent hereinbefore indicated. We do not mean to say common carriers may carry liquors free in the general sense of the term. The exception means only that they may carry them free as they were accustomed so to carry them, at the date of the passage of the act. It may be that their baggage men, porters and other employees cannot handle them for passengers. As to this no opinion is expressed, for the defendant does not claim such right. Its claim and contention is only that it may carry passengers who carry with them and keep in their own personal custody packages of liquors, labeled in accordance with the statute, when such label is required, and unlabeled when the quantity is such as not to require a label.

If such carriage of liquors by common carriers as is here complained of and admitted were a criminal offense, that alone would not authorize a court of equity to enjoin the commission of the act or repetitions thereof. Lack of power in such courts to enjoin acts merely because they are criminal or constitute public nuisances in the sense of the criminal law, or the popular sense of the term "nuisance," was declared by this court in *State* v. *Ehrlick,* 65 W. Va. 700, as the result of a very thorough and exhaustive examination of the authorities. To warrant such interposition, in the absence of a statute giving the remedy, the nuisance, whether public or private, must injure property or substantially interfere with the enjoyment thereof, directly or indirectly, or constitute a purpresture, excluding citizens from the enjoyment of their civil rights in highways and other public grounds and places, or otherwise

interfere with the enjoyment of such rights, or obstruct the transaction of public business.> The Supreme Court of the United States said in the *Debs Case*, 158 U. S. 564, that, to warrant such jurisdiction, "There must be some interference, actual or threatened, with property rights of a pecuniary nature." Every criminal nuisance is, in a sense, a public nuisance, but it is not ordinarily an occasion for injunction, because the criminal remedies are presumptively adequate. Failure of the legislature to give injunction as a further remedy is evidence of adequacy of the criminal procedure, in legislative opinion. Therefore, in such cases, the courts do not enjoin, unless some statute authorizes an injunction. On the other hand, if the nuisance affects a property right injuriously, or the enjoyment of property, the criminal procedure is deemed to be inadequate, as in other cases in which the legal remedy for civil redress often is, and injunction lies.

Whether the legislature has power to prevent such carriage of liquors as has been enjoined here, need not be determined. The question does not arise. It may never be attempted. If it can forbid the practice, it can no doubt also provide for abatement thereof by injunction.

If the defendant allowed intoxicating liquors to be sold, exposed for sale, given away, bartered or stored for such purposes in any of its cars, injunction would no doubt lie, under secs. 14 and 17 of the act, to abate such cars as nuisances. Under these sections, there is a limited statutory jurisdiction by injunction in liquor cases. It is limited to the abatement of what the statute terms nuisances occasioned by unlawful sales of liquors, not all sales, but sales under certain circumstances. There is no allegation, however, that any of the defendant's cars are so used as to make them nuisances under this statute. The bill does allege that the conduct of the defendant is in aid and assistance of the unlawful handling, disposition and use of intoxicating liquors, and the statute declares that any person who shall aid and abet, or knowingly be associated with others in maintaining such a nuisance as is defined in sec. 14 of the act shall be guilty of a misdemeanor. In as much as there is no allegation of the use of the defendant's cars as places of manufacture, sale, gift, distribution,

dispensation, barter or storage or exposure for such purposes, they are clearly not places made nuisances by the statute, and cannot be abated or enjoined as such. That section of the statute says; "All houses, boats, buildings, club rooms and places of every description, including drug stores, where intoxicating liquors are manufactured, stored, sold or vended, given away, or furnished contrary to law * * * shall be held, taken and deemed common and public nuisance." To be a nuisance under this statute and become subject to abatement by injunction, a place must be one in which liquors are handled or used in the manner described in the act. There is not even an intimation in the bill that any of the defendant's cars are so used. Hence they are not such places as the statute denominates nuisances.

Nor would the bill be sufficient, if the carriage of a person known to be an illicit dealer, with his packages of liquor treated as personal baggage in his own hands and custody, would make the defendant an aider and abettor of such person, and subject it to restraint by injunction as to him. It points out no such person, nor was it the design or intention of the pleader to do so. Its purpose is to enjoin the carriage of all persons having labeled packages of liquors in their possession, because some such persons make unlawful use of the liquors so carried. If a common carrier can be made an aider and abettor of a violator of the liquor laws and enjoined from rendering aid and assistance to him, it is obviously necessary to locate the building, house or other place constituting the nuisance and the persons who maintain it. The statute does not give this remedy against every violator of the liquor laws. It goes not against individuals primarily, but against places. The legislature has not seen fit to give it against men who merely make unlawful sales from baskets, suit cases, cartons, packages or other mere containers. It gives it against the maintenance of places in which people habitually, regularly or generally carry on the inhibited acts. A boat, wagon or other vehicle would constitute such a place. It might be an unenclosed place. But it must be a place or station of some sort in which the traffic is carried on in some form. In other words, the writ goes primarily against the place and only in-

cidentally against the persons connected with it. The plain purpose of this nuisance provision is to break up places of resort for violation of the prohibition laws. This bill designates no such places, nor even any person engaged in the maintenance of such a place.

The clear right of citizens to bring into the state, over common carriers, in a proper manner, intoxicating liquors, for personal use in their homes, would call for reversal of this decree, if right to enjoin the defendant from carrying certain persons with their labeled packages of liquor had been shown. Injunction goes only to wrongful acts. The defendant has clear right to carry some people with their packages, and those people have right to be carried. The exercise of neither of these rights could be enjoined merely because of right to enjoin other acts. Could a railroad company be enjoined from carrying cattle at all because it has shipped some diseased cattle over its road, in violation of law? If a merchant has unlawfully sold or used liquors in his establishment, could his store be shut up and abated as a place of sale of dry goods, furniture, shoes or clothing as the case might be? If a man sold liquors in his home, would the court abate the place as a residence and turn his family out in the street? Though perhaps not so intended, such is the principle of the decree. It goes far beyond the prayer of the bill.

The view of the Commissioner of Prohibition and the trial court seems to be that the defendant must recognize, respect and further the declared policy of the state to prevent the manufacture, sale and gift of intoxicating liquors, in so far as it lies in its power to do so by any reasonable effort, and that its failure to do so makes it an aider and abettor of all the violations of law to which its lawful act of carrying passengers with labeled packages of liquor may have contributed, without regard to the intention of its agents, officers and employees in the exercise of its right, which violators of the law turn to their advantage as they do the public roads and other agencies of travel and transportation. It might be that a merchant, in selling a weapon to a man he knew intended immediately to commit a crime with it, would make himself a *particeps criminis*, but that would not justify a court in restraining

him from the sale of such weapons to other persons having right to buy, own and use them. Some people have clear right to carry labeled liquor packages on common carriers, and such carriers have clear right to carry them. No act of the legislature or any other law denies either right. No act of the legislature either expressly or impliedly requires the carrier to adopt rules or regulations that will deny the law-abiding citizen his right, because other citizens do not obey the law or for any other reason. That the adoption of such regulations would aid the officers charged with duty to enforce the prohibition laws, in the enforcement thereof, and advance the state's policy respecting intoxicating liquors, constitutes no warrant of authority to the courts to prescribe such regulations for the carriers or to compel them to adopt them. The legislature only, if any tribunal, has power to take away the clearly defined right of the carrier, to serve the law-abiding citizen carrying liquor to his home for use agreeable to law. No statute vests power in the Commissioner of Prohibition or the courts to regulate or control common carriers in those respects in which the law does not control them. Likely the railroad companies could refuse to permit such packages to be carried. They may have right to exclude from their coaches everything but strictly personal baggage, such as toilet articles and clothing, but, in so far as the law does not restrain them, it is their province to make their own regulations, and, in this, they are in no way subject to the jurisdiction of the courts or the executive officers of the State.

No doubt the restraint this bill and decree seek to put upon the defendant, if applied to all common carriers, would advance the state's policy respecting intoxicating liquors, but it is not the province of the courts, nor of the executive officers of the state, to adopt measures for such purpose. On this subject, I expressed the following views in *Norman* v. *Coal Co.*, 68 W. Va. 405, 419, which are more clearly applicable here than they were there: "When the legislature has signified its intention, by some statute, to establish a certain line of public policy, courts are often, indeed almost always, called upon to extend that policy, in various ways, so as to include things not expressed by the legislature at all, either

as acts forbidden, duties imposed, or measures of enforcement. It is competent for the legislature to define the extent to which it will pursue any given line of public policy, and when it has declared that extent, I find no warrant in the law for any addition thereto by the courts. It is likewise competent for the legislature to determine and prescribe such measures or methods as it sees fit, within the constitutional limitations, for the enforcement of its policy, when it has been declared; and, finding that certain measures or methods, and no others, have been adopted and prescribed, it seems to me the courts ought to presume that no others were intended. *Expressio unius est exclusio alterius.* Failure to apply this maxim, in such cases, leads to a course of judicial legislation, which might find support in precedents, but none in sound reason or well settled law. I think it safest and best, as well as more consistent with law, to let the legislature declare its own will and purpose.''

The authorities relied upon in the brief filed for the appellee, as supporting the theory of this bill, do not sustain it in any particular. In each of them, the act enjoined was in direct violation of an express provision of a statute, as construed by the court. Here the act is not forbidden. In all but one of them, (which is now in the Supreme Court of the United States on appeal), the remedy by injunction was authorized by statute. For the acts here complained of, no statute gives that remedy, if they were unlawful. In *State* v. *United States Express Co.*, 145 N. W. 451, the injunction was against delivery of liquors in direct violation of express provisions of statutes, and the injunction seems to have been limited to deliveries to a certain individual. In its opinion, the court says: ''The question of purchase and shipment to a consignee for his own personal use is entirely eliminated.'' This could only mean that the injunction did not extend to such shipments. If it had been general, as this one is, it would have prevented them. In *Southern Express Co.* v. *State*, 66 So. Rep. 115, the injunction was authorized only against deliveries of liquors to such individuals as the company had reason to know intended to use them unlawfully, not against all deliveries. On this phase of the case, the court said: ''When in good faith,

and after proper investigation, a carrier of interstate commerce delivers liquors to a consignee without any knowledge that the same are intended by the consignee for illegal use in the state the carrier does not violate any law of the state.'' The only decided proposition in *Kansas City Brewing Co.* v. *Kansas City*, 153 Pac. Rep. 523, relied upon here, is that a moving vehicle from which liquors are sold, is a ''place'' of sale, liable to abatement by injunction. It is not alleged that any sales are made from the defendant's care. *State* v. *Adams Express Co.*, 219 Fed. Rep. 794, proceeded upon the theory that the state statute forbade deliveries of liquors by a common carrier, to any person in the state, even though they were intended for personal use. We have no such element in this case. It is not even claimed that a common carrier cannot legally transport a passenger carrying a labeled package of liquor for his personal use at home. Nor could such claim be sustained, if made. The contention is that the carrier loses this right because its agents and employees have reason to believe many people, but no person in particular, make unlawful use of the liquors so brought in.

As the acts alleged in the bill are not contrary to the laws of this state, it is wholly unnecessary to discuss the Webb-Kenyon law. It certainly adds nothing to the statute of any state.

Nor is it necessary to attempt to define the rights of the defendant as an interstate carrier, respecting intoxicating liquors. It is not complaining of the statute as it is here construed.

For the reasons stated, the decree complained of will be reversed, the demurrer to the bill sustained and the cause remanded with leave to amend the bill.

MASON, JUDGE, *(concurring):*

I concur in the conclusion reached by the majority of the court, but not in some of the points relied upon in argument. I am of opinion that the circuit court erred in holding that injunction would lie in the case presented by this record, for the following reasons, namely:—

First: Neither the manufacture, sale, nor transportation of

intoxicating liquors is an offense unless made so by statute; each is a proper subject of legislation, and all have been subjected to legislative action.

Second: In regulating the transportation of intoxicating liquors by common carriers, the Legislature has enacted, by sec. 7, chap. 13, acts of 1913, as amended by chap. 7, acts of 1915, that ''no common carrier, for hire, nor other person, for hire or without hire, shall bring or carry into this state, or carry from one place to another within the state, intoxicating liquors for another, even when intended for personal use.'' The violation of this statute is made a misdemeanor. This is a new and specific offense, created by this statute, having no connection whatever with the statute prohibiting the manufacture or regulating the sale of intoxicating liquors. The common carrier is prohibited from carrying for hire, for another, intoxicating liquors, no matter what use the owner intends to make of it.

Third: If a common carrier violates this statute by permitting a passenger riding on a ticket paid for at the passenger rate, to carry with him as personal baggage intoxicating liquors, then the remedy against the carrier is by criminal prosecution, and not by injunction, there being no equity jurisdiction conferred on the courts for such violation. Whether or not such carrying is a violation of this statute, I do not think it necessary to decide in this case. If a violation, the remedy as I have said, is by criminal proceedings; if not a violation, there is no equity jurisdiction to prevent it unless found in another section of that chapter, to which I shall refer later. Evidently the baggage of a passenger is not carried free by the carrier. The charge for carrying baggage is included in the amount paid as fare; but whether paying for carrying baggage in this way is a carrying ''for hire'' within the meaning of the statute under consideration, is not, in the view I take of the case, necessary to decide. Whether it is, or is not, there is no equity jurisdiction, in my opinion, in either event, unless confered by statute.

Fourth: But may it not be said that the carrier by permitting a passenger to carry as baggage, intoxicating liquors, thereby aids and abets the person who is carrying it for sale?

The sale would be unlawful; and by this means may it not be said that the carrier aids and abets the sale? It is contended that intoxicating liquors are not properly a part of the passenger's personal baggage, and that the carrier may refuse to give permission to passengers to carry it as such. If this contention be sound, then may it not be said that a court would have equity jurisdiction to prohibit it, under our statute? Sections 14 and 17, chapter 32A, Barnes' Code 1916, gives courts equity jurisdiction in the following cases:

"Sec. 14. All houses, boat houses, buildings, club rooms, and places of every description, including drug stores, where intoxicating liquors are manufactured, stored, sold or vended, given away, or furnished contrary to law (including those in which clubs, orders or associations sell, barter, give away, distribute or dispense intoxicating liquors to their members, by any means or device whatever, as provided in section six of this act) shall be held, taken and deemed common and public nuisances. And any person who shall maintain, or shall aid or abet, or knowingly be associated with others in maintaining such common and public nuisance, shall be guilty of a misdemeanor and upon conviction thereof shall be punished by a fine of not less than one hundred dollars nor more than five hundred dollars, 'and by imprisonment in the county jail not less than thirty days nor more than six months for each offense, and the judgment shall be given that such house, building or other place, or any room therein, be abated or closed up as a place for the sale or keeping of such liquors contrary to law, as the court may determine."

·"Sec. 17. The commissioner, his agents and deputies, and the attorney general, prosecuting attorney, or any citizen of the county where such a nuisance as is defined in section fourteen of this act exists, or is kept or maintained, may maintain a suit in equity in the name of the state to abate and perpetually enjoin the same, and courts of equity shall have jurisdiction thereof. The injunction shall be granted at the commencement of the action and no bond shall be required."

The trouble I find in upholding the injunction in this case is that it prohibits the carrier "from permitting the carriage in and upon its passenger trains　*　*　*　of any suit case,·

trunk or other container labeled as containing liquors.'' No distinction is made between packages of liquors carried by passengers for personal use and packages carried for unlawful purposes. Of course it cannot be said that a person aids or abets the commission of an offense if none is committed. I fully appreciate the difficulty, or perhaps the impossibility, of the officials of the defendant company in ascertaining what liquors carried as baggage is to be used unlawfully, and hence it is prohibited from permitting anyone to carry personal baggage when labeled as containing liquors. I do not think this can be done upon a charge of aiding and abetting the commission of an offense, in the manner above indicated.

*Reversed and remanded.*

LYNCH, JUDGE, *(dissenting):*

I can not concur in the conclusions reached by my associates. It is true there is no specific statutory authorization to proceed in equity to enjoin the carriage by defendant of intoxicating liquors in large quantities in its passenger cars as personal baggage. There is, however, in the statute a provision which the answer admits and the opinion concedes forbids the transportation of such liquors as freight or baggage by a common carrier or other person for hire. Stated in its own language, ''no common carrier for hire, nor other person, for hire or without hire, shall bring or carry into this state, or carry from one place to another within the state, intoxicating liquors for another, even when intended for personal use''. §7, ch. 32A, Code, Barnes' Handy Edition. Section 14 of the same chapter says: ''All houses, boat houses, building, club rooms and places of every description, including drug stores, where intoxicating liquors are manufactured, stored, sold or vended, given away, or furnished contrary to law'', with certain exceptions not now important, ''shall be held, taken and deemed common and public nuisances. And any person who shall maintain, or shall aid or abet, or knowingly be associated with others in maintaining such common and public nuisance shall be guilty of a misdemeanor, and upon conviction thereof shall be punished'' by fine and imprisonment; ''and judgment shall be given that

such house, building or other place, or any room therein, be abated or closed up as a place for the sale or keeping of such liquors contrary to law, as the court may determine''. And in section 17 the commissioner of prohibition, ''his agents and deputies, and the attorney general, prosecuting attorney, or any citizen of the county where such a nuisance as is defined in section fourteen of this act exists, or is kept or maintained, may maintain a suit in equity in the name of the state to abate and perpetually enjoin the same, and courts of equity shall have jurisdiction thereof''.

It is important constantly to keep in view these express and specific provisions, in an endeavor to ascertain what the legislature had in mind in enacting them. They are significant, because they shed light upon the subject matter of this controversy. They indicate a purpose to prevent the carriage of liquors into the state, or from one place to another within the state, by any of the forbidden instrumentalities. The words ''common carrier'' are comprehensive. They include railroads, express companies, steamboats, ferry boats, taxicabs, and public conveyances of every kind and description. The same inhibition reaches even private conveyances when hired for the purpose. The employment of these instrumentalities and modes of travel or transportation, it must be conceded, the legislature had in mind at the time of the enactments to which reference has been made. The manifest object of that body, when it originated and passed these statutes, was to forbid, prevent and render difficult the carriage of intoxicating liquors into or within the state. Besides, it must further be conceded that it also knew or had in mind the fact that common carriers did not transport liquors in large quantities, or permit its passengers to carry them in such quantities, in its passenger cars as personal baggage. Such carriage is an innovation upon the prior and generally recognized rules and regulations of passenger transportation. Their refusal to carry or permit the carriage in large quantities of commodities of any character in their passenger cars is a matter of common knowledge. Heretofore, they have constantly sought to prevent or discourage the use of their passenger coaches for that purpose. They did not receive for

. carriage nor permit the carriage by their passengers of heavy baggage, except in baggage cars or apartments designed and devoted to that use. Such baggage they required their passengers to check for carriage in such cars or apartments designed and used for that purpose only, or to ship by freight.

Moreover, intoxicating liquors are not personal baggage. They are not within the definition of the term. "The baggage of a passenger is generally understood to mean and to consist of articles intended for personal use during his journey or immediately thereafter, as wearing apparel and the like". *Griffith* v. *Railroad Co.*, 114 Mo. App. 591. Or such articles of necessity or convenience as are usually carried by passengers for personal use, comfort or protection during the continuance of a journey. *Railroad Co.* v. *Johnson*, 50 Col. 187. "Household articles carried by a passenger, consisting of a drawn work center piece, a table cloth, doilies, bed spread and pillow shams as well as a photographer's camera, carried for sale as merchandise, do not constitute baggage". *Railway Co.* v. *De Rosear*, 109 S. W. (Tex.) 949. "Generally speaking, nothing is baggage which a traveler is entitled to have transported by a carrier as an incident of the contract to carry him, except articles of personal comfort, convenience and ornament usually taken on journeys and visits". It does not include merchandise or furniture. *Hubbard* v. *Railroad Co.*, 112 Mo. App. 459. The term means such goods and chattels as a passenger may see fit and proper to carry for his personal convenience, comfort, taste, pleasure or protection, according to the wants and habits of the class to which he belongs and with reference to the period of transit or the ultimate purpose of the journey. Important elements to be considered in determining what constitutes baggage are the purpose and length of the journey, or of the proposed stay, and the business in which the person is engaged. *Railroad Co.* v. *Lawrence*, 42 Tex. Civ. App. 318; 4 Elliott on Railroads, §1647. Within the meaning of these definitions it is evident intoxicating liquors do not fall. Although the word baggage usually has been so defined in cases involving the liability of the carrier for the loss or injury of the articles carried, the citations serve to show what constitutes baggage as

generally understood. They apply with equal force to the situation revealed by the record before us.

Granting the right of the defendant to carry such liquors in its baggage cars as checked baggage, a carriage expressly forbidden as the defendant concedes, it doubtless would in case of loss or injury deny liability therefor on the ground that such articles did not in fact constitute baggage. For this reason, railroad and other transportation companies constantly refuse to compensate the passenger, and, when sued, seek to exonerate themselves from liability therefor by attempting to show that they are not baggage in the technical sense of the term. The defendant, therefore, by encouraging or permitting the traveler over its main and branch lines in West Virginia to carry liquors in large quantities in its passenger cars as personal baggage, undertakes to do or permits to be done indirectly what the statute forbids it to do directly. To do directly what it permits so to be done indirectly would bring the carrier within the condemnation of the statute and render it amenable to the punishment the statute imposes. Yet it is contended that the purpose of the legislature was to bestow upon a railroad a privilege of accomplishing without hire what it denied him the right to do for hire. I can not reasonably suppose the legislature had in mind that purpose.

Furthermore, we should not lose sight of the rule of construction provided by section 23, which in explicit terms says the "entire act shall be deemed an exercise of the police powers of the state for the protection of public health, peace and morals, and all of its provisions shall be liberally construed for the attainment of that purpose." Health, peace and morals are the significant terms. They are within the protective and regulative power of a municipality, the power inherent in every national and state government. The governmental police power has never been and never can be defined with any degree of precision. It is indefinable. Every attempt to clarify its meaning has resulted in confusion rather than clarification. It is an indispensable attribute of sovereignty, as much as air and water of human existence. Neither can a nation or a community long endure without health, peace and morality. When Rome became corrupt, immoral,

drunken, she ceased to be the mistress of the world. At the beginning of the present great international struggle, the Czar of All the Russias, in the exercise of his police powers, issued his ukase forbidding the sale and use of vodka, because of its debilitating effects upon the subjects upon whom he was, or might be, compelled to rely for the successful termination of the greatest and most disastrous of all wars. England undertook to restrict the use of intoxicants, for the same reason, by limiting the hours of sales, as did also others of her Allies. Upon the well recognized evil of the personal consumption of alcoholic or intoxicating beverages rests the right of any state or municipal government, in the exercise of its police power, to enact prohibition legislation. *Eberlee* v. *Michigan,* 232 U. S. 700; *Mugler* v. *Kansas,* 123 U. S. 623; *Crowley* v. *Christenson,* 137 U. S. 86; *State* v. *Express Co.,* 219 Fed. 794; *Ex parte Crane,* 156 Pac. 1006; *State* v. *Whittle,* 69 So. 652; *Marks* v. *State,* 159 Ala. 71; *Maine* v. *Pass. Pub. Co.,* 71 Atl. 394; *Glenn* v. *Express Co.,* 87 S. E. 136.

The rule of construction so prescribed requires an attempt to harmonize the variant provisions of the state, if such variance there be, instead of striving to find defects and discords. Reconciliation and enlargement, not contravention or restriction, should control. Suth. Stat. Const. §589 says: ''The modern doctrine is that to construe a statute liberally, or according to its equity, is nothing more than to give effect to it according to the intention of the law-maker, as indicated by its terms and purposes. This construction may be carried beyond the words when essential to answer the evident purpose of the act, or it may restrain the general words to exclude a case not within that purpose''. And in §590 the author says: ''Language is so copious and flexible that when general words are used there is an absence of precision, and all words and collocations of words admit of more than one interpretation. Liberal construction of any statute consists in giving it a meaning which renders it more effectual to accomplish the purpose or fulfill the intent which it plainly discloses. For this purpose the words may be taken in the fullest and most comprehensive sense. Where the intent of the act is manifest, particular words may have an effect quite beyond their natur-

al signification in aid of that intent''. The canons of construction require remedial statutes to be construed liberally to suppress the contemplated mischief and advance the remedy intended. The mischief and the remedy are to be kept in mind. Whatever is within the evil intended to be suppressed, though not within the express terms of the remedial act, is to be considered as within the statute. 23 Am. & Eng. Enc. L. 414. Where a statute, such as the one here considered, requires a liberal construction to effectuate its purposes, the court ought so to construe it as fairly and reasonably will carry out the intention of the legislature as gathered from the act considered in its entirety. *Hawkins* v. *People,* 106 Ill. 628. The first step to be taken in construing any statute, and especially one which requires a liberal construction, is the ascertainment of the scope and intention of the act, by all the aids available; and, if its words may be susceptible of a restricted or limited meaning, according to their general acceptation, such meaning may be expanded to harmonize with the purpose of the act. Suth. Stat. Const. §592. While the words must not be strained beyond their natural meaning and signification, they should receive a fair and reasonable interpretation, so as to attain the object and purpose designed.

The apparent intent, expressed in the constitutional amendment and in the prohibition statute, when read together, is the suppression of the manufacture and sale of intoxicating liquors; and, while granting the right to the use and possession of limited quantities for personal use, the provisions of the statute evidently had the purpose of rendering difficult the purchase and carriage of such articles, although labeled as required. Unlabeled, they could not be carried anywhere or in any mode or manner except in quantities of two quarts or less. Labeled, they could be carried lawfully only by the purchaser, and not by him for another, nor by another for him. The purchaser could not obtain carriage for hire, because forbidden by the statute. He must be the possessor and owner, and the alcoholic beverages must be intended exclusively for his own personal use and consumption. He could not sell them, nor within certain well defined limitations could he give them or any part of them to another for use or con-

sumption. No transportation company of any kind or character could lawfully carry them for him for hire, either as freight or as personal baggage; and no other person could in any manner lawfully carry them for him, either with or without the payment of compensation therefor.

The theory of the opinion, as I understand it, is that by failure to insert the words "without hire" after the express inhibition against the carriage of liquors by common carriers and other transportation companies, and the inclusion of such words in the inhibition against persons other than such carriers and companies, combined with the provisions relating to the maintenance of nuisances and their abatement in equity, evince a legislative purpose to leave unprohibited and available to the purchaser, without legal culpability on the part of the carrier, the usual facilities and customs of carriers respecting transportation of baggage in the personal custody of the passenger. Reduced to its simplest form, the real basis of the opinion is an implied grant of the right to use the ordinary transportation facilities to carry intoxicating liquors in large quantities as personal baggage, if properly labeled, provided the person in possession carries it with him into the passenger car, keeps it in his custody while therein, and carries it with him out of the car; provided, further, that the agents and servants of the transportation companies refrain from any active participation in receiving, protecting or in any way or by any method or means handling it, although it may inconvenience other passengers in the same car and obstruct such agents and servants in the performance of the duties assigned to them. To these conditions defendant virtually admits it does not interpose any objections, or in any manner interfere with them, except when the obstruction impedes its agents and servants in the prosecution of its business or renders unsafe its other passengers, and then only to require the apparent owner, not such agents, to endeavor to remedy the evil. For this obvious sensitiveness the only inference is the consciousness of an intentional culpability.

Is it true that, as the opinion says, defendant has not received payment of any compensation for the intoxicating liquors which it admits its passengers have with its permission

carried in large quantities in its passenger coaches? This assumption is based upon the theory that payment of fare is not payment for the carriage of baggage. It is true that the fare paid entitles the passenger to carry any articles that fall within the legal definition of the term baggage. Does not the passenger pay for that privilege? The defendant would not knowingly permit one passenger to carry the personal baggage of another together with his own. Besides, we know as a matter of common knowledge that carriers seek to prevent passengers from carrying large quantities or heavy articles as personal baggage in passenger coaches. It is safe to say that a carrier would not permit any one of its passengers so to carry the trunk of a commercial traveler containing articles or samples of merchandise, and especially not without the payment of excess charges when heavily laden. And yet the bill charges that defendant has permitted its passengers to carry in its passenger coaches intoxicating liquors in containers varying in weight from 150 to 400 pounds. True, these averments are denied by the answer, and not proved. But for the purposes of the discussion I am assuming they are true. And, if true, there is no more reason for permitting the carriage of such liquors in passenger coaches than there would be for the carriage of a commercial traveler's trunks therein, except that the latter, although not greater in weight, would occupy more space. Would the carrier permit the carriage of a keg of nails or horse shoes, or other heavy and no more bulky articles than a suit case containing liquors? Would the defendant permit each of many of its passengers to carry such articles in its passenger coaches in virtue of the contract for personal transportation? These articles carriers require to be shipped as freight, and charge therefor in addition to the personal transportation of the owner. He does not buy the privilege of such carriage when he pays for his ticket. And yet the defendant says it does not discriminate between passengers, but grants to one traveler the same privilege it grants to another.

In a very material sense, the traveler does pay for the carriage of his baggage. When purchasing his ticket, he purchases the right to carry with him a limited quantity of arti-

cles which fall within the legal definition of the term baggage—his wearing apparel and other articles of immediate use and convenience such as ordinarily the traveler carries with him in making an extended journey for pleasure or business. Travelers making short journeys frequently deem it unnecessary to carry with them such articles; but they have the right to do so, if their convenience requires, in virtue of the compensation rendered therefor to the carrier. These views are not without authoritative support. Many cases in effect say payment of fare charged for passage on railroad and other transportation facilities includes compensation for baggage when the owner accompanies it. The Elvira Harbeck, Fed. Cas. No. 4,424, 2 Blatch. 336; *Wood* v. *Railroad Co.,* 98 Me. 98; *Jones* v. *Vorhees,* 10 Ohio 145; *Wells* v. *Railroad Co.,* 59 Ore. 165; 4 Michie on Carriers, §3497. When the passenger does not accompany it, or does direct it to be forwarded to him, the compensation paid by him for his ticket does not include the right to forward the baggage to his destination; but the carrier may claim additional compensation either in advance or upon delivery, and rely on his lien or on the personal responsibility of the owner. *Wilson* v. *Railway Co.,* 56 Me. 60. And, what is highly important and significant as supporting what has been said as to the carriage of intoxicating liquors in large quantities in passenger cars as personal baggage, as well as upon the question under immediate consideration, it is said "a contract to carry without additional compensation a reasonable amount of personal baggage is implied from the sale of a ticket to a passenger, the price paid for the ticket or for transportation embracing compensation for the carriage of the baggage; but such implied obligation is limited to such articles of personal baggage as one reasonably requires for the comfort or convenience of the passenger and his family". 2 Moore on Carriers 1302, citing *Isaacson* v. *Railroad Co.,* 94 N. Y. 278; *Saunders* v. *Railway Co.,* 128 Fed. 15; *Beers* v. *Railroad Co.,* 34 Atl. 541; *Railroad Co.* v. *Fahey,* 52 Ill. 81; *Railroad Co.* v. *Brewer,* 20 Kan. 669; *Com.* v. *Railroad Co.,* 15 Gray 447; *Railroad Co.* v. *Kennedy,* 41 Miss. 671; *Smith* v. *Railroad Co.,* 41 Miss. 671; *Railroad Co.* v. *Irvine,* 84 Va. 553; all of which support the text. How

can it be said, then, that, within the purview of the statute, the defendant has not carried intoxicating liquors for hire. It may be that technically defendant does not do so; but does it not virtually come within the legislative meaning, whereby the enacting body must have had in mind their transportation as expressage or freight as well as personal baggage of the traveler? If so, the conduct of defendant does bring it within the condemnatory provisions of the statute, notwithstanding its assumed innocence of an intentional transgression of the act.

Moreover, and as significant, defendant denies it transports or permits the transportation of baggage as such containing intoxicating liquors in violation of the statute. It says, however, that its regulations forbid the checking of any baggage containing such liquors. And yet it admits the carriage of large quantities of intoxicating liquors in its passenger cars. It carries and permits the carriage of a commodity as baggage which it will not carry or permit to be carried in baggage cars. Nor does it deny, but virtually admits, the averment of the bill that a large part of the liquors it carries or permits to be carried into this state in its passenger coaches as baggage is and has been so carried into the state for the purpose of storage and sale in violation of the laws of the state. It acknowledges information to the effect that persons who by its permission have carried such liquors into and within this state in its passenger cars as personal baggage have been convicted of violating the laws of the state because of the unlawful sales thereof. By these admissions and concessions, or by its failure to deny the charges made in the bill, the defendant has placed itself in the unfavorable position of one who either knowingly or unknowingly aids and abets or assists those who violate such laws.

The continued acts of both carrier and passenger clearly tend to break down and destroy the expressed will and public policy of the state. Such permissive transportation virtually amounts to the promotion of a collusive scheme or device or subterfuge to evade the laws of the state. In this view, it is not a false conception to say that, under the charges of the bill and the admissions of the answer, the carriage of such liq-

uors constitutes the principal undertaking of the carrier, and the carriage of the passenger in possession of intoxicating liquors in such quantities, under the guise of personal baggage, a mere incident of the principal undertaking. The carriage of such liquors in large quantities, therefore, would be for hire, and hence within the express inhibition of the statute.

Notwithstanding the admissions of the defendant that it has permitted its passengers to carry into the state, and between its stations within the state, large quantities of liquors as baggage in its passenger coaches, and its failure to deny that such liquors were and still are carried into this state for storage and sale in violation of the laws of the state, and its disclaimer of any knowledge and duty to know the purpose and intent of the passengers whom it permits so to carry such liquors, it challenges jurisdiction of a court of equity to inhibit the carriage by it into the state on its passenger coaches as the personal baggage of the passenger. And from what has been said it is obvious that the defendant has in violation of the statute knowingly or unknowingly aided, assisted and abetted the passengers who did violate the law and were convicted, as it virtually concedes, of an actual violation of the laws of the state, by the carriage of such liquors in such quantities in its passenger coaches as baggage.

The defendant admits the averments of the bill that the advisory representatives of the state notified or requested it to adopt and enforce such reasonable rules and regulations as will prevent the carriage of liquors in such manner and quantities into the state and between points within the state. These notices defendant also admits it has ignored, and avers an intention on its part not to do anything to hinder or prevent such use of its passenger cars, and claims to have no right or authority to do so, and that equity can not compel it to interpose in that behalf.

The doctrine seems to be well established that one who either from carelessness or design habitually serves those who engage in pursuits criminal or detrimental to the public interests, as declared by statute, may be restrained by injunction from rendering the nefarious service, even if that service be not criminal in the sense that no statutory punishment is

prescribed for it. ''Every government, entrusted by the very terms of its being with powers and duties to be exercised and discharged for the general welfare, has the right to apply to its own courts for any proper assistance in the exercise of the one or the discharge of the other; and it is not an answer to its appeal to one of its courts that it has no pecuniary interest in the matter. The obligation it is under to promote the interests of all and to prevent the wrongdoing of one resulting in injury to the general welfare is often of itself sufficient to give it standing in court''. *State* v. *Express Co.*, 219 Fed. 794, 799.

Equity assumed jurisdiction to enjoin and abate as a nuisance an express company habitually delivering intoxicating liquors, in *State* v. *Express Co.*, 145 N. W. 451, and *Express Co.* v. *State*, 66 So. 115. Also in *State* v. *City Club*, 65 S. E. 730, it was held that, although the unlawful sale of such liquors might be punished as a crime, equity nevertheless had jurisdiction to enjoin it at the suit of the state. The same doctrine was applied in *State* v. *Water Power Co.*, 82 S. E. 181, and *Com.* v. *Repass*, 115 S. W. 1132, 21 L. R. A. (N. S.) 836, wherein equity did exercise jurisdiction at the suit of the attorney general to enjoin as a common nuisance the maintenance of a place where pools on horse racing were sold, notwithstanding such sales were unlawful, where the criminal laws had proved ineffectual. The court says the remedy is preventive and does not reach what has been done. The continued maintenance of a saloon where intoxicating liquors are sold in violation of law may be enjoined and abated as a public nuisance in equity at the suit of the state, notwithstanding the maintenance is a crime, the criminal law not providing adequate means for the suppression of such continued maintenance. *State* v. *Crawford*, 28 Kan. 726, 42 Am. Rep. 182. Such jurisdiction is based in part at least on the ground that, in the language of Lord Elden in *Attorney General* v. *Cleaver*, 18 Ves. 211, ''an indictment for nuisance, though for what may be called a criminal act, has for many purposes a civil aspect'', and in part on the ground that, although the legal remedy of abatement is available, a court of equity can supply a more efficacious remedy. So in *Walker*

v.*McNelly,* 121 Ga. 114, the maintenance of a bar room as a place for the sale of liquors within three miles of an academy in violation of law was enjoined and abated at the suit of the solicitor general as a public nuisance, although the maintenance thereof was punishable as an offense against the laws of the state. In *People* v. *Lumber Co.,* 116 Cal. 397, equity enjoined as a nuisance the deposit of saw-dust, shavings and refuse from a saw-mill and box factory in the river, on the ground that it polluted the stream and destroyed the fish therein. A wagon from which sales of intoxicating liquors were made in the public streets of a city was abated by injunction, in *Brewing Co.* v. *Kansas City,* 153 Pac. 523. In *Athletic Club* v. *State,* 143 Ind. 98, a prize fight was enjoined, and, in *People* v. *St. Louis,* 10 Ill. 351, the obstruction of a navigable stream, although no pecuniary rights were involved. The injunction process has been granted, in virtue of statutory authorization, to restrain the violation of state prohibition laws. *State* v. *Crawford, supra;* 92 Ia. 472; *State* v. *Marston,* 30 N. H. 603; *State* v. *Saunders,* 66 N. H. 39.

I think it is erroneous to say, without due restriction, that, because in some of the cases cited individual property rights were involved, equity will never interfere to prevent a nuisance, where, as in the case before us, there is a statute expressly conferring authority in equity to abate that which the legislature has deemed proper to declare to be a nuisance. For while it may not be always within the functional power of a legislative body to stigmatize every act as a nuisance, it can declare such acts as selling, keeping and storing intoxicating liquors as nuisances. *State v. Saunders, supra.* Violations of the act of congress regulating commerce may be restrained in equity at the suit of the United States, under the authority of the act. *United States* v. *Elliott,* 62 Fed. 801; *Railroad Co.* v. *Penn Co.,* 54 Fed. 730.

In *Crow* v. *Canty,* a suit in the name of the state of Missouri, 207 Mo. 439, equity exercised jurisdiction to inhibit a fight between Mexican bulls and matadors in the presence of many spectators in attendance at the St. Louis World's Fair, in the absence of a statutory authorization of such proceeding. The court said: "A bull-fighting arena may be abated and

bull-fighting perpetually enjoined as a public nuisance injurious to public safety and good morals, notwithstanding the fact that the offenders are punishable in criminal courts, or the fact that the property rights of the complainants are not involved''. This holding the court justified on the ground that the preventive writ ''was a more speedy, effectual and permanent remedy than can be had at law.'' The jurisdiction, it was said, was salutary, ''especially where a nuisance affecting the health, morals and safety of the community''. 2 Story Eq. Jur., §921 *et seq.* That a statute or the common law has authorized the abatement of a public nuisance does not prevent equity from restraining the maintenance of a nuisance when the legislature has conferred jurisdiction for the same purpose. The remedies are cumulative. Joyce on Int. Liq. §612; Woolen & Thornton on Int. Liq. 976; 21 Am. 7 Eng. Enc. Law 704; *Mugler* v. *Kansas, supra.*

Much determinative importance is attached to the case of *State* v. *Ehrlick,* 65 W. Va. 700. This and that cause are readily distinguishable, as we conceive the Ehrlick case. As observed heretofore, the act of 1913 relating to prohibition does give equity jurisdiction to abate nuisances by the injunctive process, in the case of places where intoxicating liquors are stored, kept, furnished or given away. In the Ehrlick case, the court said at page 711: ''It is also competent for the legislature, within the constitutional limits of its power, to declare any act criminal and make the repetition or continuance thereof a public nuisance, so as to enable the courts on conviction to pronounce judgment of abatement, or to vest in courts of equity power to abate them by injunction; but it is not the province of the courts to obtain such jurisdiction for themselves. We have some statutes of that character now relating to the violations of laws regulating the liquor traffic and others. They stand on the principle underlying the Kansas statute construed and upheld in *Mugler* v. *Kansas,* cited.''

The inhibition of our statute reaches out further than the maintenance of a nuisance resulting from the manufacture, storage and sale of intoxicating liquors, or the giving or furnishing of such liquors, in violation of the prohibition act. It has brought within its condemnation ''any person who

shall aid or abet, or knowingly be associated with others in maintaining such common and public nuisance'', and subjects them to the same sentence of fine and imprisonment and decree of abatement.

As other questions relied on by defendant are not discussed in the majority opinion, I say nothing as to them, except to observe that after some reflection upon the authorities its contentions are not convincing.

I would affirm the decree.