## The Connecticut Mutual Life Insurance Company *vs.* Ernest E. Rogers et al.; Appeal from Board of Equalization.

First Judicial District, Hartford, October Term, 1930.
Maltbie, Haines, Hinman, Banks and Avery, Js.

Argued October 15th, 1930—decided April 6th, 1931.

*Lucius F. Robinson,* with whom was *John C. Parsons,* for the appellant (plaintiff).

*Ernest L. Averill,* Deputy Attorney-General, with whom was *H. Rogers Jones,* and, on the brief, *Benjamin W. Alling,* Attorney-General, for the appellee (defendant).

MALTBIE, C. J. In 1928 the statute provided that every mutual life insurance company should, on or before the first day of March in each year, deliver to the tax commissioner "a sworn statement specifying the total amount of interest, dividends, rents and all other investment income, and also the rents from real estate situated and taxed in this state, actually received by such company during the year ended on the thirty-first day of December next preceding"; and that each such company should pay to the state treasurer annually a tax equal to a certain "percentage of the total amount of interest, dividends, rents and other investment income actually received by it during the year ended on the thirty-first day of December next preceding, exclusive of rents from real estate situated and taxed in this state and interest on evidences of indebtedness owned by it and exempted from taxation." Public Acts of 1919, Chap. 337, §§ 1, 2, 3; Public Acts of 1925, Chap. 184 (General Statutes, Revision of 1930, §§ 1278, 1279). It was the duty of the board of equalization to examine and correct the statements so returned. Public Acts of 1919, Chap. 337, § 5 (General Statutes, Revision of 1930, § 1113). The appellant is a mutual life insurance company. In February, 1928, it made to the tax commissioner a sworn statement purporting to specify the various matters required by the statute, and stating as the amount upon which the tax was to be paid $6,313,-376.41. This statement the board of equalization amended by adding as an item of investment income the sum of $545,106. From its action in making this

addition the appellant took an appeal to the Superior Court and the case has been reserved for our advice.

The respondent does not attack the right of the appellant to bring the appeal, but does claim that, under the Act of 1919, it is not within the power of the court to grant relief against the addition made by the board, because its action is made conclusive by the terms of the Act. Section 5 of the Act (§ 1113 of the General Statutes, Revision of 1930) provides that the board shall examine and correct the statements and returns made to the tax commissioner by mutual life insurance companies; that if any company fails to file a return the board shall make out a statement for it upon the best information it can obtain; and that "such statement or return so corrected or made shall be conclusive as to the facts required to be specified in the statement." We had before us in *State* v. *New York, N. H. & H. R. Co.*, 60 Conn. 326, 22 Atl. 765, a very similar provision of an Act for the taxation of railroad companies, except that the word "final" was used in place of the word "conclusive." We held that where the board had acted upon the statements, the State could not thereafter recover a larger amount than would be due under them; but we were careful to point out (p. 334) that, as the only way to collect the tax was by suit, the company making the return could "contest the whole tax, as to its validity or amount, or any part of it," in that suit; "the valuation of railroad property under these statutes and the assessment of taxes thereon is not final, in the sense that it constitutes a charge upon the property subjected to the tax or a liability fixed on the corporation owning it." At that time the statute provided for no appeal from the board of equalization to the courts. The statute concerning the taxation of mutual life in-

surance companies which preceded the Act of 1919 had an almost identical provision as that quoted above from the Act. General Statutes, 1902, § 2449. In 1917, an Act was adopted which provided that "any town, corporation or national banking association claiming to be aggrieved by the action of the board of equalization" might appeal to the court. Public Acts of 1917, Chap. 186. In the Revision of 1918 the provision in the law as to the conclusiveness of the action of the board in correcting a return made by a mutual life insurance company or in making one for it, was retained, although the broad right of appeal from the board then existed, as it still does. General Statutes, Revision of 1918, §§ 1247, 1343; General Statutes, Revision of 1930, § 1124. When the Act of 1919 was adopted the provision as to the conclusiveness of the action by the board was again retained.

The decision in the case of *State* v. *New York, N. H. & H. R. Co., supra,* makes it clear that the provision that action by the board shall be "conclusive" does not mean that it is not open to attack by any company adversely affected by it. Indeed, as such additions as the board may make to the statement returned by a company are made without notice to it or any opportunity to be heard, the statute would be, to say the least, open to serious question upon constitutional grounds, if the word "conclusive" were given the meaning claimed by the respondent. 3 Cooley on Taxation (4th Ed.) § 1224. What the legislature evidently intended was that the action of the board should be final and conclusive unless upon direct attack by some established procedure. When in 1917 a broad right of appeal was given from any action by the board, it afforded a direct means to attack its conclusions; and when in the Revision of 1918

this right, and also the provision as to the conclusiveness of the action of the board were both retained, the legislature put its stamp of approval upon the meaning which we have given to the latter provision. It follows that upon this appeal, we may review the action of the board so far as to determine whether it acted arbitrarily, illegally, or so unreasonably as to constitute an abuse of discretion. *Holley* v. *Sunderland,* 110 Conn. 80, 83, 147 Atl. 300.

The amount added by the board to the statement of the appellant was based upon certain entries which appeared in the annual statement made by it, in compliance with the statutes, to the insurance commissioner of the State for the year 1927. Public Acts of 1927, Chapter 271 (General Statutes, Revision of 1930, § 4138). In this statement, under "INCOME," was an item, "Gross profit on sale or maturity of ledger assets," $726,901.44; under "DISBURSEMENTS," two items, "Gross loss on sale or maturity of ledger assets," $1264.74 and "Gross decrease, by adjustment, in book value of ledger assets, (a) Real estate," $180,531.23; and the board arrived at the amount it added to the appellant's statement by deducting from the item listed under income the two items listed under disbursements. Admittedly the subject-matter of these items does not fall within the meaning of the words "interest, dividends, rents" as used in the statute. The question is, are they included within the words "other investment income" as there used?

To answer that question it is necessary to see what was included in those items. Taking, first, the item from the statement as to income, "Gross profit on sale or maturity of ledger assets," it might seem from a casual reading that this represented profit made either upon the sale of assets of the company or from the payment of maturing securities which

were bought for a sum below their face value. As a matter of fact that is not necessarily so. The next item in the statement to the insurance commissioner is "Gross increase, by adjustment, in book value of ledger assets, viz.: (a) Real estate, per Schedule A; (b) Bonds, per Schedule D (including $      for accrual of discount); (c) Stocks, per Schedule D." Of these items (b) is the only one which in the year in question the appellant found it necessary to fill out. This represented the amortization of various bonds held by it, that is, an adjustment of their book value where they had been purchased below their face value, made each year, so that, at maturity, their book value would equal the sum due upon them. Items (a) and (c) were intended to permit the statement of adjustments made in the book value of real estate and stock so that it would fairly reflect their fair market value. From the nature of these items it follows that, in order to make the statement to the insurance commissioner truly represent the financial condition of the company, the amount to be entered under the head of "Gross profit on sale or maturity of ledger assets" would have to represent, as it did in the statement before us with reference to the bonds, the difference between the amount actually received on such sale or maturity and the adjusted book value. A similar situation exists with reference to the items entered under "DISBURSEMENTS" in the appellant's statement to the insurance commissioner. The item "Gross decrease, by adjustment, in book value of ledger assets" which, as far as it applied to real estate, was used by the board in arriving at the amount to be added to the return of the appellant, was designed to afford an opportunity to enter an adjustment of the book value of real estate or stock so that it would more truly represent their actual value and an adjustment

of the book value of bonds by amortization where they had been purchased at a premium. It necessarily follows that the items used by the board in determining the amount to be added to the return of the company, "Gross loss on sale or maturity of ledger assets," would represent, if the statement was truly to represent the financial condition of the company, not the difference between the amount actually received for the property sold and its actual cost, but the difference between the amount received and the adjusted book value of the property at the time it was sold.

If the board intended to add to the return of the appellant as "other investment income" any profit it had made upon the sale of its assets, less any loss it had suffered by such sales, it obviously failed of its purpose. In taking the various items from the statement made to the insurance commissioner it overlooked the fact that item "bonds" under the heading "Gross profit on sale or maturity of ledger assets" did not represent actual profit; that the item deducted, "Gross loss on sale or maturity of ledger assets," did not represent actual losses, and that the item "Gross decrease, by adjustment, in book value of ledger assets, to wit, real estate" merely represented a change of book value and not at all any actual loss that had occurred. That the board proceeded upon an erroneous basis in determining the addition it made is sufficiently clear. But we cannot stop here, because, if it was right in adding any profit made by the appellant upon the sale of its assets, the changes necessary to make its calculations conform to the fact would demonstrate that the result it arrived at was too favorable to the appellant and also because a very large amount, $527,218.16 in fact, of the item "Gross profit on sale or maturity of ledger

assets" did represent an actual profit from the sale of stocks above their actual cost, without any adjustment of book values having been made.

Previous to the enactment of the Act of 1919, every mutual life insurance company was required to pay a tax upon its corporate franchise computed upon the amount of its premium notes and the market value of its other assets less specified deductions. General Statutes, 1918, § 1339. In 1913 a special state commission on taxation of corporations, in its report to the General Assembly (p. 162), had recommended that all mutual insurance companies be taxed upon "their gross receipts from investments (i.e., gross interest and rents) plus their premiums from Connecticut business," and in the calculation of the amount which such a tax would produce (p. 163) it specified this item as "Total gross interest and Rents." This report was very carefully prepared and covered a wide field and while it considerably antedated the enactment of the law of 1919, it is not too much to assume that the legislature had it in mind when it adopted income as the basis of the tax provided in that law. The definition by the commission of the sense in which it used the words "gross receipts" as "gross interest and rents" is therefore suggestive. At least this is true, that the Act of 1919 did mark a definite change in the basis of taxation from one upon property to one upon income. In two respects also the terms of the Act itself are indicative of the legislative intent as regards the question before us. One is its emphasis upon the fact that the taxable income is that which was actually received by the company during the previous year. The other grows out of the application of a principle of statutory construction. The legislature having specified "interest, dividends, rents," is to be assumed, when it added "other

investment income," to have intended investment income of the same general character as that particularly specified. *Brown* v. *Congdon*, 50 Conn. 302, 309.

When an insurance company sells a share of stock, a bond, or a tract of land, it does not by that transaction alone ordinarily add in any way to its assets. Before the sale it has a piece of property the value of which is what it will bring in the market; when the property is sold, the same value before represented by it is thereafter represented by the money received. But the value of the assets of the company remains the same and those assets are equally charged with the obligations resting upon every mutual life insurance company as to the property in its possession. *Fuller* v. *Metropolitan Life Ins. Co.*, 70 Conn. 647, 664, 41 Atl. 4. In fact the effect of the transaction is no different whether the property be sold for more than it cost, for the same amount, or for less than it cost; in either event assets of a certain value have merely changed their form. From a consideration of the real nature of the transaction it becomes apparent that in reality a tax levied upon the amount received from the sale of any particular asset above what it cost is a tax levied upon the property of the company, which was the very basis of taxation set aside when the Act of 1919 was adopted; that this excess is of a character very different from the income derived from "interest and rents," in the words of the report of the tax commission of 1913, and from the "interest, dividends, rents" particularly specified in the Act of 1919; that, while in a certain sense it may be said to be "actually received" when the sale takes place, in reality it has accrued as an increment of value usually over a considerable space of time before that and is then only transmuted from one form of property to another; and that the proceeds

of the sale remain as before capital assets unless and until they are in whole or in part allocated by proper authority to some other use. We do not see how the legislative intent as it appears in the Act of 1919 could reasonably be said to include a profit derived from the sale of assets of the company.

In fact the phrase "other investment income" has a very definite field in which to operate. Under the heading of "INCOME" in the annual statements to the insurance commissioner are listed some forty numbered items. These fall into certain definite classes: First are some fourteen having to do with premium income, separately totaled; then follow a few items of a related nature; then come ten items numbered 25 to 34 covering interest on mortgages, loans and deposits, interest and dividends on bonds and stocks, other items of interest received by the company, and rents, all totaled under the item "TOTAL INTEREST AND RENT"; then a heading "From other sources" with numbered spaces following for a specification of the nature and amount of each, with a space for a separate total; then an item of borrowed money and one of agents balances previously charged off, separately totaled and then the items we have already considered, "Gross profit on sale or maturity of ledger assets" and "Gross increase, by adjustment, in book value of ledger assets." These statements to the insurance commissioner were made in the same form when the Act of 1919 was adopted, and it may be reasonably assumed that, in determining the basis of taxation upon income, the legislature would use them as a means to acquire the necessary information. This appears rather clearly from the close approximation of the words of the statute "interest, dividends, rents" to the subject-matter of the items 25 to 34, just referred to. The further words of the statute,

"other investment income," then had their natural reference to such items within that designation as are entered under the next heading, "From other sources."

It is true that in a summary near the end of the statement to the insurance commissioner, headed "EXHIBIT OF THE CHANGES IN SURPLUS FOR THE YEAR, ACCORDING TO CLASSES OR LINES OF BUSINESS" occurs an item (71) "Investment (less investment expenses)" and it appears that it has been the practice of the appellant to include in this item the figures representing "Gross profit on sale or maturity of ledger assets" and "Gross increase, by adjustment, in book value of ledger assets," as they appeared in the statement of "INCOME" in the earlier part of the statement. So in the same exhibit it appears that it has been the practice of the appellant to include under "DISBURSEMENTS" in an item "Other disbursements" the figures representing "Gross loss on sale or maturity of ledger assets" and "Gross decrease, by adjustment, in book value of ledger assets."   In this exhibit, however, only two spaces are given for entering all kinds of income aside from premiums, item (71) and item (72), "other income"; and considering the form of this exhibit, the very limited purpose it serves, and the fact that apparently it would make no difference in which of the two the particular items mentioned are included, we cannot attach importance to their inclusion in item 71.   Even more true is this of the inclusion under "Other disbursements" of the items from the statement of "DISBURSEMENTS" because in this particular exhibit there was no other item to which they might properly be assigned.

We have not considered the various references made in the brief to decisions of other courts as to the meaning given to the word income when used in other statutes, because none of them presents a sufficiently

analogous situation to be of value. Construing the statute before us in the light of its history, its language, the purpose it is designed to serve and the circumstances surrounding its enactment, we answer to the first question propounded to us in the reservation that the legislature did not mean to include under the phrase "other investment income" as used in the statute any profit derived from the sale or maturity of ledger assets of the company, much less the particular items added by the board of equalization. In view of this answer no reply is necessary to the other questions propounded.

No costs will be taxed in this court to either party.

In this opinion HAINES AND AVERY, Js., concurred.

HINMAN, J. (dissenting). The fundamental contention of the appellant, which is sustained by the majority opinion, is that the investment income of a life insurance company does not include profits resulting from sale or maturity of ledger or capital assets. It is held that a tax upon the amount received from the sale of any such asset above what it cost is a tax upon the property of the company instead of upon its income. To this proposition I do not assent. An important purpose for which an insurance company acquires, holds, and converts investment assets is that it may profit not only by the current dividends or interest received therefrom, but also by increase in value above cost which can be realized upon by a sale or at maturity. Such transactions are an integral part of the corporation's business; gains resulting therefrom are a part of its profits. "The suggestion that the entire proceeds of the conversion should be still treated as the same capital, changed only in form and containing no element of income

although including an increment of value, we reject at once as inconsistent with the general purpose of the act. Selling for profit is too familiar a business transaction to permit us to suppose that it was intended to be omitted from consideration." *Doyle* v. *Mitchell Bros. Co.*, 247 U. S. 179, 183, 38 Sup. Ct. 467, 62 L. Ed. 1054.

The case just cited related to the Federal Corporation Excise Tax Act, but the conception expressed therein, and in other similar cases, that profit accruing from a conversion of capital assets is to be regarded as income, is equally applicable to the situation before us. So, also, is the manner indicated of determining the amount of gain, by withholding from the gross proceeds "an amount sufficient to restore the capital value," and treating the balance as profit and as income. It is to be conceded that increases in value reflected merely by adjustments on the books do not constitute taxable income until the gains become an "increase of wealth in hand out of which money may be taken to satisfy the enforced pecuniary contributions levied to help bear the public expenses. It does not comprehend increase in the value of capital investment discernible only by estimation and not otherwise. It refers simply to an increase in value realized by sales or conversion of capital assets." *Bingham* v. *Commissioner of Corporations and Taxation*, 249 Mass. 79, 81, 144 N. E. 77. This limitation is recognized and expressly respected in the act under consideration, which taxes, only, investment income "actually received" during the year covered by the return. This provision is significant, further, of an intention to tax income other than "interest, dividends, [and] rents" as to which items a specification that they be "actually received" is manifestly superfluous. I maintain, therefore, that the scope of the term "in-

come" includes gains accruing from sources comprehended by the item here in dispute, viz., "profit on sale or maturity of ledger assets."

I am also unable to agree that the statute is not to be construed as contemplating the inclusion of this item in the computation of the tax imposed thereby. The majority concede that, in passing the Act of 1919, the General Assembly was mindful of the report of the special commission, rendered in 1913, and would naturally resort to the annual statements made to the insurance commissioner for information in determining the basis of taxation upon income. I think that these considerations have not been accorded the weight and significance to which they were entitled, in construing the Act. The recommendation of the commission proposed a tax upon gross receipts from interest and rents and premiums from Connecticut business. The Act passed eliminated the element of premium receipts, limited the taxable income to that "actually received during the year," but included not only the interest and rents mentioned in the commission plan, but also "all other investment income." This addition militates against the contention that income from interest, dividends and rents, only, is intended to be taxable.

The most natural and reliable sources of information in ascertaining what elements constitute investment income of an insurance company are the classifications prescribed by the state insurance executives and the practical interpretation thereof by the insurance companies themselves in making the annual reports of their financial standing for the information of the insurance authorities and the general public. Inspection of those forms and reports clearly indicates that profits on sale or maturity of ledger assets

28

were both included in, and regarded and treated as, investment income.

The forms of these reports required to be filed with the insurance commissioner, in 1919 and since, include under "INCOME" detailed specifications of premiums received, several classifications of gross interest, gross dividends on stocks, and gross rent from company's property, also "Gross profit on sale or maturity of ledger assets" and "Gross increase, by adjustment, in book value of ledger assets." Under "DISBURSEMENTS" items of "Gross loss on sale or maturity of ledger assets" and "Gross decrease, by adjustment, in book value of ledger assets" are included. On page nine of the form in use in 1919, under "Investment Exhibit," appeared items of profit and loss on sales, and increase and decrease in book value, of ledger assets, referring to corresponding items on page two. In the form of this report used for the year 1927, under an "EXHIBIT OF THE CHANGES IN SURPLUS FOR THE YEAR ACCORDING TO CLASSES OR LINES OF BUSINESS," the showing of "INCOME" is divided into three classifications: "(70) Premiums; (71) Investment (less investment expenses); (72) Other Income."

The stipulated facts disclose that it has been the practice of the appellant, in making up this "Exhibit," to include in the item (71) of Investment Income the figures representing "Gross profit on sale or maturity of ledger assets" and "Gross increase, by adjustment, in book value of ledger assets," as they appeared in the statement of "INCOME" on page two of the form, and to include under "DISBURSEMENTS," in this Exhibit, the gross losses and the gross decrease of the same nature. It is a reasonable inference that in the 1919 Act the General Assembly had reference to, and intended, investment income in the sense, and of the scope, disclosed by these elaborate and carefully con-

ceived and executed statements, which were, so far as appears, the most suitable and authoritative information available to the legislature upon the subject of the constituents, as applied to insurance companies, of the basis of the new plan of taxation.

The state treasurer, comptroller and tax commissioner constitute the board of equalization. It appears from the stipulated facts that when the board met (on March 31st, 1920) to check and correct the first statements made under the Act of 1919, the question of inclusion of these items, for purposes of taxation, was considered, and it was decided that the income received by the sale, maturity or adjustment in book value of a company's ledger assets was investment income, but it was the opinion of the board that the increase or decrease, by adjustment, in the book value of ledger assets, such as accrual of discount and amortization of bonds, was not income "actually received." It is stipulated, also, that "the board has sought to apply the rule so adopted in all cases." The construction thus given the statute by the state tribunal charged with administering it is entitled to weight and significance. *Kern River Co.* v. *United States,* 257 U. S. 147, 42 Sup. Ct. 60; *Swendig* v. *Washington Water Power Co.,* 265 U. S. 322, 44 Sup. Ct. 496; *Logan* v. *Davis,* 233 U. S. 613, 34 Sup. Ct. 685.

Discussion as to the method and accuracy of the computation of the correction appealed from appears to be relevant to the only reserved question answered by the majority opinion only as relates to the practicability of ascertainment of the amount of income derived from sale or maturity of ledger assets. Strictly, the profit from this source consists of the excess of the sale or redemption price above the original cost, unaffected by intervening adjustments of book values, so

that the entire profit would be taxable as income received during the year in which it was realized upon. However, at the meeting above mentioned, the board of equalization adopted the policy of permitting the companies at their option to include adjustments in and have reflected in the amount of taxable income, the increase or decrease as it accrued "instead of in one lump sum on the sale or maturity of ledger assets." In cases where this alternative has been accepted and consistently complied with, the profit subject to tax for the year of sale or maturity would be the excess of the amount realized above the adjusted book value as included in the last preceding report, the remainder of the increase over cost having been included and absorbed in the income taxed in the preceding years. There appears to be no serious difficulty in computing the element of taxable income, on either basis.

For the foregoing reasons I maintain that profit on sale or maturity of ledger assets is investment income within the meaning of Chapter 337 of the Public Acts of 1919.

In this opinion BANKS, J., concurred.