THE SAVINGS BANK OF ROCKVILLE *vs.* ROY C. WILCOX, TREASURER, ET AL.

MALTBIE, C. J., HAINES, HINMAN, BANKS and AVERY, Js.

Argued April 7th—decided July 18th, 1933.

*Anson T. McCook,* for the appellant.

*Ernest L. Averill,* Deputy Attorney-General, with whom were *H. Roger Jones* and *William H. Nelson,* Assistant Attorneys-General, and, on the brief, *Warren B. Burrows,* Attorney-General, for the appellee.

HAINES, J. The plaintiff appealed from the refusal of the board of equalization to allow a deduction from its state tax, of certain taxes on real estate standing in its name in the calendar year next but one preceding the claim for deduction. By the stipulation of facts accompanying the reservation it appears that on January 19th, 1932, pursuant to General Statutes, Cum. Sup. 1931, § 241a, the bank filed a return to the tax commissioner, upon a blank furnished by the latter for that purpose, which return appears in the record as Exhibit A. The bank was called upon therein to furnish "a true and correct statement of the amount of all deposits of the above named corporation (exclusive of surplus) on the first day of January, 1932, as required by Chapter 68 of the General Statutes, Revision of 1930," being that containing §§ 1285 to 1291 inclusive, entitled "Savings Deposits." This was amended by the bank by adding to the above sentence "as amended by Section 241a of the Public Acts of 1931," and the amount filled in by the bank was $15,267,757.13. Then followed a list of certain items exempt from the tax as provided by statute, and these as filled in amounted to $711,629, leaving the "Amount taxable" $14,556,128.13. The statutory tax of one quarter of one per cent on this amount was $36,390.32. The blank, Exhibit A, further provided for a "List of property assessed against said The Savings Bank of Rockville . . . on which taxes were paid during calendar year 1931." This was amended by the bank by inserting after the word "Rockville" the words "in the year 1930," and after the figures "1931," the words

"and previously, as below." The items filled in by the bank under this heading amounted to $16,552.76. This portion of the return was made up of four paragraphs, headed, respectively, "Paid during year 1931," "Paid during year 1930," "Paid during year 1929," "Paid during year 1928." All but two of the items in the first paragraph were taxes upon the list of 1930, amounting to $4677.03, as to which no question is raised. The remaining items of the return, amounting to $11,875.73, were taxes on lists of 1925, 1926, 1927, 1928 and 1929, and the allowance of these was refused by the board, the claim being that the law permitted only deductions for taxes assessed in 1930 and paid in 1931. The bank claimed the right to deduct the entire $16,552.76 from the "Amount taxable."

The decision of the question thus presented is determinative of the present reservation.

As will be seen by the italicised portions of § 241a in the footnote, there are two requirements relating to

Sec. 241a. RETURNS BY, AND TAX ON, SAVINGS BANKS. The treasurer of each savings bank shall, on or before the twentieth day of January, annually, deliver to the tax commissioner a sworn statement of the amount of all its deposits, exclusive of surplus, on the first day of said month; also of the amount invested in any bonds issued by this state, or by any town or city in the state, in aid of the construction of any railroad, and which, by the statutes of this state, are exempt from taxation; also of the amount exempted from taxation by the provisions of section 1286; *also of the assessed value of all real estate assessed against such savings bank in the year next but one preceding the first day of said January, together with a specific list of the same, and of the amount of taxes paid thereon in the year preceding the first day of said January;* and each savings bank shall pay to the state, one-half on or before the twentieth day of February and one-half on or before the twentieth day of July in each year, a tax on its corporate franchise computed as follows: From the amount of its deposits, exclusive of surplus, shall be deducted fifty thousand dollars, and also the amount invested in any bonds issued by this state, or by any town or city in this state, in aid of the construction of any railroad, and which, by the statutes of this state, are exempt from taxation, and also

these real estate taxes and these must be considered in determining the purpose and intent of the legislature. The first clearly requires the bank to report to the tax commissioner a specific list (1) of all real estate *assessed* against the bank during the calendar year next but one preceding the return, together with the assessed value of that real estate, and (2) a statement of the "amount of taxes *paid* [on that real estate] in the year preceding the first day of said January."

We cannot concur in the bank's view that these provisions have no essential bearing on the general language of the later provision which allows the deduction of "taxes paid upon all real estate assessed against such savings bank in the year next but one preceding the first day of said January."

A reference to the stipulation shows that the taxes referred to in the first italicized portion of the statute, i.e. those assessed against the bank as record owner in 1930 and paid by it in 1931, are the first eight items in the first of the four paragraphs of the return, Exhibit A. These were primary obligations of the bank to the municipality and their deductibility from the state tax is conceded and properly allowed by the board. The last two items in this first paragraph of the return were taxes assessed in 1928 and 1929, respectively, but not paid by the bank until 1931. The second paragraph contains taxes assessed in 1928 and 1929 and paid by the bank in 1930. The third paragraph lists taxes assessed in 1926, 1927 and 1928 and paid by the

the amount exempted from taxation by the provisions of section 1286; and the annual tax shall equal one-fourth of one per centum of the amount of its deposits remaining, *less the amount of taxes paid upon all real estate assessed against such savings bank in the year next but one preceding the first day of said January.* Said state tax shall be in lieu of all other taxes upon savings banks, their deposits and surplus, except the aforesaid taxation upon their real estate.

bank in 1929, and the fourth paragraph lists taxes assessed in 1925, 1926 and 1927 and paid by the bank in 1928. Only the first eight items on the return therefore are called for by the statute.

Referring to the dates when the bank acquired the title to the various properties, it is apparent that those properties included in the first six items, were in each case acquired by the bank before the assessment of 1930 was made, and that the assessment of the properties in the remaining items of the return, with one exception, was against former owners and before the bank acquired title. When these last-named properties were foreclosed, the assessment of course, stood against the former owners who were liable therefor in a personal action by the municipality if the latter chose to bring it.

When the lands with the unpaid taxes thereon came into the possession of the bank by foreclosure these unpaid taxes became, under the statute, a part of the mortgage debt, and this in turn generally represented the approximate cost to the bank of the lands it thus acquired. Whether the bank succeeds or fails thereafter in recovering the full amount of this debt due it, is a hazard of the business of loaning money on real estate; and it eventually takes a loss, or makes a profit. In the case of loans conservatively made at not more than the statutory limit of fifty per cent of the value of the land, it may reasonably be expected that in most cases the bank will profit, in which event the payment of the delinquent tax will have cost it nothing. The construction of the statute which the bank claims, would permit the deduction of such taxes which do not in reality represent depletion of the funds of the bank, and this the legislature could not have intended.

The obvious purpose of the first italicized provision of the statute was to put the commissioner in posses-

sion of such information as he required to enable him to compute the statutory deduction granted to the bank, and it clearly suggests the scope and limits of the exemption which was in legislative contemplation. The statute requires the bank to return only the taxes assessed in the calendar year next but one preceding the return and paid in the calendar year next preceding the return. A compliance with this requirement does not afford the tax commissioner the necessary basis for computing the additional taxes claimed by the bank. Moreover, the required return does not furnish the name of the owner against whom such taxes were assessed and if the many savings banks of the State were permitted to deduct back taxes, assessed against former owners, the commissioner's duty of computation and verification would require a search by him for data extending to practically impossible limits. We are satisfied that if the deduction of such taxes was intended, the required return would have called for the facts necessary to permit the tax commissioner to perform his duty.

We cannot assume that a legislative enactment is devoid of purpose, and we must seek the object to be accomplished and the purpose to be subserved. *Di Biase* v. *Garnsey,* 103 Conn. 21, 27, 130 Atl. 81; *Old Saybrook* v. *Public Utilities Commission,* 100 Conn. 322, 328, 124 Atl. 33. Sound construction requires that the statute be considered "in the light of its history, its language, the purpose it is designed to serve and the circumstances surrounding its enactment." *Connecticut Mutual Life Ins. Co.* v. *Rogers,* 113 Conn. 14, 25, 154 Atl. 246. In construing a statute and determining its purpose and scope, every part should, so far as possible, be made operative and harmonious with every other part. *Kelly* v. *Dewey,* 111 Conn. 281, 286, 149

Atl. 840, and citations; Endlich, Interpretation of Statutes, p. 44.

It is regrettable that the second italicized portion of this section was not made more specific, at least by punctuation. Standing by itself and ignoring all the other provisions of the statute, it might possibly be read as the bank reads it, to permit the deduction of taxes whenever theretofore paid if assessed against real estate which stood in the name of the bank during the calendar year next but one previous to the return, whereas to conform to and harmonize with the first italicized portion, it must be read as limiting the deduction to those taxes assessed in the name of the bank in 1930 and paid by the bank in 1931. In other words, we consider the general language of the second portion of the Act as referring to the same basis of exemption and the same real estate, specifically referred to in the first portion; as though the statute read, "upon all *said* real estate." *Connecticut Mutual Life Ins. Co.* v. *Rogers,* 113 Conn. 14, 21, 22, 154 Atl. 246. "The rule is based on the obvious reason that if the legislature had intended the general words to be used in their unrestricted sense they would have made no mention of particular classes." 36 Cyc. p. 1120; *State* v. *Campbell,* 76 Iowa, 122, 125, 40 N. W. 100; *People* v. *Edelstein,* 91 N. Y. App. Div. 447, 448; *The City of Salem,* 31 Fed. 616, 618.

The interpretation which we have given this statute conforms to the practice of the tax commissioner's office and the bank in computing the deductions previously accorded as shown by the stipulation and exhibits. "It is a familiar rule of statutory and constitutional construction that such usage, while not absolutely binding upon the courts, is entitled to great weight." *Water Commissioners* v. *Curtis,* 87 Conn. 506, 511, 89 Atl. 189; *State* v. *South Norwalk,* 77 Conn.

257, 264, 58 Atl. 759; *Mattoon's Appeal,* 79 Conn. 86, 90, 63 Atl. 784. "Where the law has contemporaneously been put into operation, and in doing so a construction has necessarily been put upon it, this construction, especially if followed for some considerable period, is entitled to great respect, as being very probably a true expression of the legislative purpose, and is not lightly to be overruled, although it is not conclusive." 2 Cooley, Taxation (4th Ed.) pp. 1111, 1112, § 502.

"It is a 'settled rule that the practical interpretation of an ambiguous or uncertain statute by the executive department charged with its administration is entitled to the highest respect, and, if acted upon for a number of years, will not be disturbed except for very cogent reasons.'" *Swendig* v. *Washington Water Power Co.,* 265 U. S. 322, 331, 44 Sup. Ct. 496; *Logan* v. *Davis,* 233 U. S. 613, 627, 34 Sup. Ct. 635. We discover in the amendment of 1931 no intent to change the essential basis theretofore established and followed for the computation of the tax deduction granted to savings banks. While this may in exceptional cases work to the disadvantage of the bank as pointed out in its brief, that does not justify or permit us to avoid such a result by a construction which violates the intent of the legislature as we find it expressed in the statute. The remedy for any such claimed inequity is not a judicial one.

We conclude that the deductions now claimed under § 241a were properly disallowed. This constitutes a sufficient answer to all the questions propounded on this reservation.

No costs will be taxed in this court.

In this opinion the other judges concurred.