## BEAVERDALE MEMORIAL PARK, INC.
### *vs.*
## CORNELIUS J. DANAHER, ADMINISTRATOR, UNEMPLOYMENT COMPENSATION ACT

Superior Court      New Haven County      File No. 57201

### MEMORANDUM FILED DECEMBER 12, 1939.

*Bronson, Rice & Lyman,* of New Haven, for the Appellant.

*Harry Silverstone, Assistant Attorney General,* of Hartford, for the Respondent.

McEVOY, J.  The appellant corporation is engaged in the business of operating a cemetery.  It also sells cemetery lots.  For both of these purposes it has engaged Mr. E. A. Sexton and has entered into two contracts with him, Exhibit B and Exhibit 1.  Under Exhibit B Mr. Sexton has engaged four salesmen whom he pays.

Under Exhibit 1 the appellant has engaged Mr. Sexton to manage its cemetery.  The appeal is taken because the respondent administrator has made an assessment against the appellant under the claim that the salesmen are employees of the appellant —and not independent employees of the agent, Mr. Sexton.  The claim of the appellant is that, in so far as the sale of the lots by Sexton is concerned, Mr. Sexton is an independent contractor.

If Mr. Sexton, in the sale of the lots, is an independent contractor then the appellant should prevail on this appeal.

In part 2 of its brief, the appellant discusses "The nature of the proceeding." Under this topic it is said by the appellant that the appellee, in argument, claimed that "this appeal is one from an administrative agency and that therefore the only issue is as to whether or not the administrative agency acted unreasonably, arbitrarily or illegally." The appellant says that this claim will not bear analysis—that it is not so.

Taking up this claim in some detail:

In *State vs. Coleman*, 96 Conn. 190, at page 195, our Supreme Court said: "In the first place, the presumption that a public officer will discharge his duties according to law assumes that the law tells him what his duties are."

"Nor should the constitutionality of a statute be made to depend upon the way in which it is finally administered by those who are charged with its execution." (Id. 196.)

"The overwhelming weight of authorities in the State courts is that statutes and ordinances which purport to give to administrative officials an absolute and uncontrolled discretion to grant or refuse permission to do something which all citizens similarly situated have an equal right to do are unconstitutional." (Id. 197.)

"If an administrative order is so unreasonable as to justify judicial interference it is within the power of the court to set it aside, and the court must necessarily have jurisdiction to determine the facts involved in such an issue." *DeFlumeri vs. Sunderland,* 109 Conn. 583, 585.

In that case an application was made to the mayor of Danbury for a certificate of approval of certain land for use as a gasoline station.

The statute provided for an appeal by "any person aggrieved by the performance of any administrative act provided for in this Act."

The appeal alleged "that the location was a suitable one. . . . and that the plaintiff was aggrieved by the administrative act. . . ."

At the close of the plaintiff's case the respondent moved to dismiss the appeal upon the ground that the court had no power

to review the administrative act of the mayor. That motion was denied. Then an amendment was filed in which it was alleged that the mayor, "in denying his application, exceeded and abused his powers and acted arbitrarily and illegally."

"The nature of the so-called 'appeal' allowed by various statutes from the decisions of administrative boards has been discussed in numerous cases in this court and its true character is definitely settled. It is not an appeal in the sense of a transfer of jurisdiction from one court to another, but simply provides 'a process, under the misleading name of appeal, for invoking the judicial power to determine a legal injury complained of, or the legality of an act done by the officers of another department'." *DeFlumeri vs. Sunderland, supra*, 585.

"The controlling question upon this appeal is whether the mayor acted illegally or arbitrarily or abused his discretion. . . . The question involves an inquiry as to whether his action was beyond his statutory powers, or beyond his jurisdiction, or whether he acted arbitrarily, as without notice and due hearing, or so unreasonably as to constitute an abuse of official discretion." (Id. 585.)

"Considerations of local interests and conditions determining his administrative policy may justify his action in any particular case which it would be impracticable for a court to ascertain and apply *even if it could be lawfully burdened with such duties*." (Id. 586; italics not in original.)

"The providing of a process for invoking the judicial power to control his action does not transfer to the court the power to issue the certificate. The court found that the land of the plaintiff constituted a suitable location for a public gasoline station. *That question was not before the court upon this appeal*." (Id. 586; italics not in original.)

The court then went on to discuss the nature of the proceedings in appeals from county commissioners in granting or withholding the granting of licenses. "In those cases the claim that the commissioners acted illegally or exceeded or abused their powers was ordinarily based upon a disregard or misunderstanding of the statutory qualifications for a license, and the determining of these questions, requiring as it did, an interpretation of a judicial nature, called for an original investigation and in a qualified sense a hearing *de novo* in the Superior Court. . . . *Such was not the nature of the question before the*

*court upon this appeal.* The only express limitation upon the mayor's power is that it shall be exercised only after notice and hearing. The action of the mayor was taken after due notice and hearing and was clearly within his statutory powers and jurisdiction. Even so, it would still be subject to attack in this proceeding if it appeared that his denial of the certificate of approval was arbitrary or so unreasonable as to be an abuse of discretion." (Id. 587; italics not in original.)

"Of course the question here is *not whether the trial court deemed these reasons sufficient* to warrant the denial of the application, but whether *the action of the mayor* was so devoid of any reason therefor as to render it arbitrary or so unreasonable as to be an abuse of discretion." (Id. 588; italics not in original.)

In its brief the appellant says (page 6) : "Under the statute now under inquiry the Unemployment Commissioner makes this determination in the privacy of his office. There is a determination of facts only in the event of an appeal from his action."

The appellant then goes on to claim, in its brief, that there should be a trial *de novo* and that the court should, upon this appeal, decide the matter upon the facts presented to it—and not upon the facts as they appeared to the unemployment commissioner when he made his finding.

It is claimed by the appellant that in *Brein vs. Connecticut Eclectic Examining Board,* 103 Conn. 65, there was a trial *de novo.*

In that case the then existing statute authorized the State Board of Health "to issue a certificate of registration upon due notice from one of such examining committees that the applicant has satisfactorily passed the required examination...." (Page 82.)

There the certificate was issued but later was withdrawn when it appeared to the committee that the certificate was secured by fraud and the Supreme Court held that "the action of the committee is equivalent to an authoritative declaration that its original approval, which is the statutory condition precedent for the issuance of the certificate, was never truly and in reality given." (Id. 83.)

One of the claims of the appellant, in that case, was that the

appellant "had never had his day in court." "His grievance is that he was not given opportunity for a preliminary hearing by the eclectic examining board, before that board requested the board of health to revoke his certificate." (Id. 84.)

"As to the right to a hearing the accepted rule is that one hearing before judgment, if conducted in accordance with the fundamentals of judicial procedure, satisfies the constitutional requirement." (Id. 85.)

". . . .'where the action of an administrative body involves only a purely administrative matter, the court, on a statutory appeal from such a body, has before it only the question, if properly raised, whether the body has acted illegally or has exceeded or abused its powers.'" (Id. 87.)

"The Superior Court did not undertake to try a case of revocation *de novo*. It has not assumed to revoke appellant's license, but merely to inquire *de novo* into the alleged fact that the appellant procured his license by fraud; and upon finding that issue in the affirmative, to adjudge that the eclectic examining board and state board of health did not act illegally or exceed their limited jurisdiction, in revoking appellant's license." (Id. 87.)

In construing the action taken in that case the statutory provisions then in effect should be taken into consideration.

Section 2860 of the General Statutes, Revision of 1918, provided that "if any person shall consider himself aggrieved by the doings of the State Department of Health. . . .he may, within thirty days after having received written notice from said State Department of Health of the revocation of his certificate of registration, appeal to the superior court. . . .which court may grant the proper relief."

In section 2861 it was provided that ". . . .the court before which such charge is preferred shall. . . .summon such accused person to appear before it. . . .to show cause, if any he have, why his certificate of registration should not be revoked. . . . The court may thereupon proceed to hear such charges, and upon finding the same true shall certify such finding to the commissioner of health, who shall thereupon revoke the certificate of registration of the person so accused."

In furtherance of its claim the appellant cites *Huntington Telephone Co. vs. Public Utilities Commission*, 118 Conn. 71,

but, at page 80 of that opinion, our Supreme Court said: "In granting such application in the exercise of its administrative function the commission cannot be held upon the facts found to have acted arbitrarily, unreasonably, in the abuse of its power, or illegally; and there is, consequently, no basis for interference by the court with the decision of the commission in the premises."

A distinction must be observed in considering the action of the appellate court in its reception of evidence for various purposes. Evidence may be received, in certain cases, so that the appellate court may, in its discretion and, under the law, determine whether or not relief should be granted upon the facts presented to it. This is a different purpose than is the receiving of such evidence for the purpose of determining what the facts were before the commission or the administrative officer, as illustrated in *Skarzynski vs. Liquor Control Commission,* 122 Conn. 521, where, at page 525, our Supreme Court said:

"Hence we have held the action of the commission in refusing to grant a permit must be sustained unless it appears that it acted 'arbitrarily, illegally or in abuse of its discretion.' . . . . The issue so presented is one which only the trial court can itself determine upon the basis of the facts found by it or by a committee or referee. In determining that question the court must often consider how the case stood *before the commission* . . . . If it should appear from *the records of the commission* that an applicant offered no evidence before it as to some fact which the Legislature has made a condition of the issuance of a permit, and the permit was refused on that ground, proof before the court that he actually had complied with the condition would not justify an order to the commission that the permit issue . . . ." (Italics not in original.)

"Where it does not appear on the hearing upon the appeal what conclusions of fact the commission reached, the court can only, by hearing the evidence or by reference, determine *what the facts really were* and assume that the commission had those facts before it." (Id. 526; italics not in original.)

In *Grady vs. Katz,* 124 Conn. 525, at page 530, this principle was affirmed in the following language: "It is true that it was not legally necessary for the board to make a formal finding that the ordinance imposed unnecessary hardship upon Mursko, but a full and *complete statement in the minutes of the board's action,* made with such particularity as to enable the court upon

appeal to clearly understand *what was done,* is highly desirable." (Italics not in original.)

"The second method was that which was adopted by the plaintiffs in this case. They offered evidence as to the *testimony* before the board upon which it acted and what that evidence was is stated in the trial court's finding, which is not subject to correction." (Id. 530.)

Further in that case, at page 531, the following appears: "The conclusions of the trial court determinative of the case, that the evidence *before the board* did not warrant a finding of practical difficulties or unnecessary hardships, and that the decision of the board in granting the application was contrary to and not in harmony with the general purpose and intent of the zoning statute and ordinance, were correct." (Italics not in original.)

It would therefore seem, in view of the citations made from the previous cases, that the purpose of reception of evidence by the court in this proceeding is to determine whether or not there was, *before the unemployment commissioner,* sufficient or proper evidence to justify the action which he took and not whether, in the opinion of this court, *as distinguished from that of the unemployment commissioner,* such action was justified upon the evidence.

At page 7 of the appellant's brief the case of *James vs. MacDonald,* 7 Conn. Sup. 135, is cited upon the claim that "the Superior Court. . . .has placed the burden upon the appellee of proving his assertion."

This suggestion involves the consideration of the terms and meaning of the section of the statute which the court was then construing. In lines 17 and 18, of section 530c of the 1935 Cumulative Supplement to the General Statutes, headed "Determination of boundaries", that statute reads "If said *commissioner shall be unable to prove* the location of any such boundaries or limits"; and in lines 25 to 28, "the expenses. . . .of the commissioner for. . . .services. . . .in *reestablishing or locating* such boundary lines." (Italics not in original.)

It would therefore appear that, in that memorandum of decision, the trial court did not place the burden on anybody but that it simply followed the plain provisions of the statute so that the case cited is not authority for the claim that the appellee, in other cases than a case where the commissioner acts under

the specific provisions of the statute, has the burden of either proceeding or proving.

Having disposed of the question of procedure, consideration of the merits is in order.

There were two contracts between the appellant and Mr. Sexton. The question for decision is "whether the service performed by said Sexton under Exhibit B is service performed under a contract of hire, creating a relationship of master and servant, within the meaning of section 1334e (a) (1)."

In that exhibit it is provided that the "corporation....is desirous of employing the services of said Sexton in connection with the sale of....lots"; that the corporation designated Sexton as its sole and exclusive agent for the sale of the lots; that the corporation reserves the right to have removed from such selling organization any employee whom it deems undesirable and inefficient; that the corporation provide and maintain at its own expense....a suitable office equipped with telephone service, stationery, plaques, advertising literature and employ in said office an office clerk who shall keep the books of the corporation, receive incoming money and render statements of all sales and collections thereon to Sexton. It should be observed that it is the corporation which receives the incoming money and renders statements to Sexton—and not the reverse; the corporation was to do the advertising at its own expense and such advertising was to be such as the corporation and Sexton, by agreement, should deem necessary; it was further provided that Sexton, during the life of the contract, was to offer certain suggestions to the corporation in such way as should seem advisable to Sexton; the corporation further reserved the right of control over the sales; Sexton was not free to choose the method but he was authorized to offer "suggestions" for the corporation to adopt for the advancement of sales; the corporation further reserved the right to have removed from such selling organization any employee whom it deems undesirable and inefficient; the office was, in one connection at least, in charge of the office clerk paid for by the appellant corporation.

"The means and method of conducting this business, as we have in part detailed, comprise the essence of this business. The subject of sale, the terms of sale, and the proceeds of sale, remained in the control of the Company. Practically this constituted a general control." *Aisenberg vs. Adams Co., Inc.*, 95 Conn. 419, 422.

"The right of discharge is one of the strong indications that the relation is one of employment. An independent contractor must be permitted to finish his contract in the absence of breach on his part." (Id. 423.)

It should be further observed that Sexton is not in the business generally of selling cemetery lots. He is restricted by his other contract (Exhibit 1, paragraph 5) to selling only the appellant's cemetery lots and may sell other cemetery lots only outside of New Haven County and then only providing he does not neglect his duties as manager.

It is true that he was selling other "perpetual care" in New Haven County but he was not selling cemetery lots.

Further, in paragraph 5, it was specifically provided that Sexton might sell other lots "provided said Sexton does not neglect his duties as manager."

The two contracts made by and between the appellant and Sexton should be mutually considered.

These two contracts are part of the same transaction and represent an attempt to cover different phases of Sexton's service to the company.

They should be construed together. *Sherman's Sons Co. vs. Industrial & Mfg. Co.*, 82 Conn. 479, 481.

The wording of the two contracts as to employment is singularly similar. In Exhibit B the wording is "whereas, said corporation is desirous of employing the services of said Sexton in connection with the sale of the lots" and in Exhibit 1 "whereas said corporation now desires to employ said Sexton as its general manager."

It is a fair inference that the word "employ" was used in both instances in the same sense.

The amount of remuneration for the services under Exhibit 1 is dependent on the services rendered under Exhibit B, and so also, the time for payment for services under Exhibit 1 follows the payment for services under Exhibit B. It should further be observed that Sexton does not himself undertake, under Exhibit B, to sell cemetery lots—only "to organize, maintain, and supervise a selling organization"; and he testified that he did not ordinarily make sales himself.

It would seem therefore that he is in both instances a super-

visor for the corporation and is not engaged in carrying out his own business in either case.

It is found that the corporation has, in Exhibit B, reserved the right of control and that this contract is, therefore, a contract creating the relationship of master and servant.

"The test of the relationship is the right to control. It is not the fact of actual interference. . . .but the right to interfere. . . ." *Caraher vs. Sears, Roebuck & Co.*, 124 Conn. 409, 413.

"The possession of the right of control is sufficient. . . . The relationship of employer-employee does not require the exercise of such right." (Id. 414.)

In the case of a statute of wide application, as is an unemployment compensation act, in its adoption, interpretation, and administration, as well as in determining its validity, it is the general field of its operation and effect which is to be regarded rather than its application to individual exceptional cases, and appropriateness to the general situation is the predominant consideration. *Duys & Co., Inc. vs. Tone*, 125 Conn. 300, 311, 312, citing *Jeffrey Mfg. Co. vs. Blagg*, 235 U.S. 571, 577.

The appellant cites *Northwestern Mutual Life Ins. Co. vs. Tone*, 125 Conn. 183, in sustenance of its claim. That case was reserved to our Supreme Court to declare whether agents of a life insurance company were employees of the insurance company "within the contemplation of the Unemployment Compensation Act of this state." At page 188 of that opinion, our Supreme Court said: "*We would hesitate to adopt a construction of our statute which would in any way interfere with the harmonious operation of the plan as a whole.* However, the stipulation for reservation states that in twenty-nine of the states and the District of Columbia, where statutes similar to ours have been adopted, *either by specific statutory exemption or administrative ruling,* life insurance agents compensated by commissions are exempted, while in only five states have rulings or decisions that they are within the statutes been made and *in no instance has this been held to be so by a court of last resort;* and the commissioner of internal revenue has made a ruling that agents of the plaintiff authorized to solicit applications for life insurance policies or annuity contracts are not within the federal act, and, while not of course in any sense conclusive of the final attitude of the federal officers charged with the ad-

ministration of the act, this ruling is entitled to be considered until reversed by higher authority. *Savings Bank of Rockville vs. Wilcox,* 117 Conn. 188, 194, 167 Atl. 709. *A decision on our part that the plaintiff's agents are not within the act would, therefore, accord with a rather generally accepted view of the proper scope of the law.* However, our duty is to seek the legislative intent expressed in the act of our own Legislature and, having ascertained that intent, we must give effect to it." (Italics not in original.)

Thus a general rule of conformity was laid down. The remainder of the opinion shows that, upon the particular facts in that case, the insurance company was not in position to exercise such control as to make the agents its employees.

In *Jack and Jill, Inc. vs. Tone,* 126 Conn. 114, quoting from *Glielmi vs. Netherland Dairy Co.,* 254 N.Y. 60, 171 N.E. 906, Cardozo, J., it was said: "The salesman has no discretion as to manner of performance, or none that is substantial....If he fails to work it [his route] diligently, he knows that there will be an end of his employment as surely as if he were working for a stated wage. On the one side there is an intimacy of control and on the other a fullness of submission that imports the presence of a 'sovereign', as the master, we are reminded, was sometimes called in the old books."

The *Jack and Jill* case, the most recent utterance of our Supreme Court upon this subject, indicates that general principles, while helpful, are not, alone, determinative of the existing relation, but that careful consideration, comparison and analysis of the specific facts is essential. Applying the principles involved to the facts in this case it is concluded that the employees who work under Sexton (called the employees of Sexton) are employees of the appellant and that they are such employees for the purposes of the unemployment compensation act.

The appellant also asks for a declaratory judgment in the following words:

2. By way of a declaratory judgment, that this court declare that the employees of said Sexton are not employees of appellant for the purpose of the unemployment compensation act.

Since it is found that the employees of Sexton are the employees of the appellant the prayed declaratory judgment may not be entered.

Judgment may be entered, accordingly, in favor of the respondent upon this appeal.