STATE EX REL. JOSEPH M. ROURKE *v.* ARTHUR T.
BARBIERI, TOWN CLERK OF NEW HAVEN

BROWN, C. J., JENNINGS, BALDWIN, INGLIS and O'SULLIVAN, JS.

Argued October 7—decided October 15, 1952

*Thomas G. Meeker,* with whom were *Charles J. Parker* and, on the brief, *Claire Sweany,* for the appellant (plaintiff).

*John G. Cicala,* as amicus curiae.

*George G. DiCenzo,* for the appellee (defendant).

O'SULLIVAN, J.  This is an action of mandamus instituted by the plaintiff as an elector of the city of New Haven.  The essential allegations of his complaint are the following: On July 3, 1952, there was filed with the defendant in his capacity of town clerk of New Haven a petition signed by the plaintiff among many others.  The petition requested that a referendum be held at the next general election, on November 4, 1952, to determine whether a council-manager charter, proposed by the signers and attached to the petition, should be adopted by the voters of the city.  After first certifying that the petition bore the requisite number of valid signatures and that it had been filed with him as town clerk in accordance with law, the defendant transmitted it to the board of aldermen.  On August 11 the board formally accepted the petition and passed an order that "a special election be held in the City of New Haven on Tuesday, September 16th, 1952 between the hours of 8:00 A. M. and 6:00 P. M., Eastern Daylight Savings Time, for the purpose of allowing all qualified electors of New Haven, as

determined by the last completed voting list, to vote for the adoption or rejection of a proposed Council-manager charter for the City of New Haven as proposed by a petition of at least 5% of such electors." This order was approved by the mayor on August 12. The defendant does not intend to comply with the request made in the petition that the proposed charter be acted upon at the election of November 4 but, on the contrary, has determined to give warning of a special election on September 16 in accordance with the order of the board of aldermen.

The relief which the plaintiff sought on the foregoing allegations was an order in the nature of a mandamus directing the defendant to place the question of adoption or rejection of the proposed charter on the voting machines at the general election to be held on November 4, 1952, and also directing him to include said question in the warning of that election. Additional requested relief of an equitable nature need not be referred to since this would involve a discussion of a phase of the case which has, by the passage of time, now become moot.

The defendant demurred (Practice Book § 309) to the foregoing allegations of the complaint on the broad ground that the petition requested him to act in a manner which was not within the proper scope of his duties as town clerk. The demurrer was sustained and from the judgment entered thereon the plaintiff has appealed. The sole issue before us is whether the court erred in holding that the statute does not require the defendant to comply with the petitioners' request. This calls for a construction of two sections of the Home Rule Act of 1951. General Statutes, Cum. Sup. 1951, §§ 118b, 119b.

So far as is pertinent to the problem presented in this case, § 119b recites that any action aimed at

amending or changing the charter of a municipality "shall be initiated by a two-thirds vote of its legislative body . . . or by a petition filed with the town clerk of such municipality, signed by at least . . . five per cent of the qualified voters." As pointed out by the trial court, these two methods are alternative and independent of each other as sources of initiation.

Section 118b requires electoral approval of any charter change initiated by either method. It provides that the proposed change shall not be valid and effective until it is "approved at a general election of such . . . city . . . or at a special election called by a majority vote of the legislative body of such . . . city . . . and warned and held for that purpose, at which election at least fifty-one per cent of the electors qualified to vote at such election, as determined by the last-completed voting list, shall have voted on such action."

The trial court held that neither statute empowers the board of aldermen to call a referendum when the charter change is proposed by petition, as in the case at bar, and, by the same token, that neither statute empowers the town clerk or the signers of the petition to set the election day on such referendum.

There is no more elementary rule of statutory construction than that the intention which the legislature has expressed must govern. *Stamford* v. *Stamford,* 107 Conn. 596, 605, 141 A. 891. That intention is to be determined primarily from the language used in the statute. *Lee Bros. Furniture Co.* v. *Cram,* 63 Conn. 433, 438, 28 A. 540. If the statute is clear, there is no room for construction. *Swits* v. *Swits,* 81 Conn. 598, 599, 71 A. 782. Should ambiguity exist, however, a court is not confined to

the literal meaning of the words. Consideration may extend, among other things, to the purpose sought to be attained. *West Hartford* v. *Thomas D. Faulkner Co.,* 126 Conn. 206, 211, 10 A. 2d 592. Thus a broad view of §§ 118b and 119b must be taken to obtain a proper concept of the legislative objective. Furthermore, it must be borne in mind that, being ambiguously worded, the statutes should be construed to make effective, if possible, the purpose for which they were passed. *Kelly* v. *Dewey,* 111 Conn. 281, 291, 149 A. 840.

Both statutes are part of the Home Rule Act of 1951. Public Acts 1951, No. 338, §§ 1, 2. The purpose of that legislation was to avoid the necessity of action by the General Assembly and to repose in the voters of a municipality the power to effectuate, within certain limitations, changes in its charter. On certain aspects of the mechanics of operation, the legislature spoke in unmistakable terms. As shown above, there is no obscurity as to the two methods by which proposals may originate, nor is there any uncertainty that the validity of the change is contingent upon approval by the electorate at either a general or a special election. The same situation prevails as to what agency may call a special election. A special election can be called only by the legislative body of the municipality.

This leaves but one element of possible uncertainty. Although § 118b expressly provides that approval of a proposed change may be had at a general election, doubt arises at first reading as to the party or agency authorized to present the desired question for determination at such an election. It is the defendant's claim that § 118b vests in the board of aldermen the discretion of deciding whether the proposed change shall be submitted at either a

special or a general election. He maintains that in § 118b the language "called by a majority vote of the legislative body of such ... city ... and warned and held for that purpose" modifies not only the words "special election," as it obviously does, but also the words "general election."

This claim lacks merit since it would require us to hold that the board of aldermen of New Haven can legally call a general election. We have been referred to no authority which supports a holding of that nature. The board possesses no such power. The requirement, found in § 118b, of a call by majority vote of the legislative body necessarily applies only to a special election, since general elections are controlled by constitutional provisions, statutes and private acts. Conn. Const. Amend. XLV; General Statutes §§ 492, 1030. We cannot impute to the legislature an intent to pass an unconstitutional act or, in the absence of an intent clearly expressed in the act, to enact one which involves a departure from existing statutory law. *State* v. *Muolo*, 119 Conn. 323, 330, 176 A. 401. Section 118b does not authorize the board of aldermen to call a general election. Moreover, the statute significantly provides that a petition for a charter change shall be filed with the town clerk rather than with the clerk of the legislative body. And equally significant is the absence of any provision directing the town clerk to deliver the petition to the legislative body. It therefore appears that the General Assembly intended that the board of aldermen should have no power to intervene where, as here, the petitioners sought to have their proposal acted upon at a general election.

We further point out that an examination of the Home Rule Act demonstrates that one of the legislative purposes was to empower a stated percentage

of the electorate of each community effectively to initiate for decision by the voters changes in their local charters. It cannot be assumed that the General Assembly, after vesting this power in the electors and circumscribing it with appropriate safeguards, would, at the same time, place in the hands of the local legislative body authority to interfere with its exercise to the extent of crippling or even of destroying its effectiveness. It is a matter of common knowledge that ordinarily there is slight likelihood that a majority of the qualified electors will participate in a special municipal election. To hold that a local legislative body had the power, upon presentation of such a petition as in this case, to determine that the charter change proposed should be submitted to the electors at a special election instead of at a general election might well result in thwarting the exercise of the right given petitioners under the statutes. This, as appears from what we have stated above, would be violative of the legislative intent, and such a construction cannot be sustained.

The fact remains that the legislature intended the use of general elections for the adoption or rejection of proposed changes in local charters. A rule of statutory construction of considerable assistance in resolving the present dilemma is that any legislative enactment conferring a privilege or right carries with it, by implication, everything necessary to ensure the realization of that privilege or to establish that right in order to make it effectual and complete. *Bissell* v. *Butterworth*, 97 Conn. 605, 615, 118 A. 50; *Bateman* v. *Colgan*, 111 Cal. 580, 587, 44 P. 238; *Newcomb* v. *Indianapolis*, 141 Ind. 451, 460, 40 N. E. 919; *People* v. *Eddy*, 57 Barb. (N. Y.) 593, 598; *Mayor* v. *Sands*, 105 N. Y. 210, 218, 11 N. E.

820; *Commonwealth ex rel. Cartwright* v. *Cartwright,* 350 Pa. 638, 644, 40 A.2d 30; *Saund* v. *Saund,* 100 Vt. 387, 393, 138 A. 867; *State* v. *Baltimore & O. R. Co.,* 78 W. Va. 526, 534, 89 S. E. 288; 50 Am. Jur. 237.

The application of this rule dissipates all doubt as to the legislative intent expressed by the statutes. Since the proposed change in the charter was initiated by a petition filed with the town clerk and since the petition requested the submission of the question to the electorate at the general election of November 4, 1952, the town clerk is, by reasonable implication, under the duty of incorporating the question in the warning which the statute requires him to promulgate for the general election to be held on the Tuesday after the first Monday in November. General Statutes § 1053. Very early in our judicial history we approved the rule that a statute ought to be so construed that, if it can be prevented, no clause, sentence or word shall be superfluous, void or insignificant. *Barstow* v. *Adams,* 2 Day 70, 98; *Fenwick* v. *Old Saybrook,* 133 Conn. 22, 28, 47 A. 2d 849. The construction which we have adopted renders every part of the statutes operative. See *State* v. *Dorau,* 124 Conn. 160, 168, 198 A. 573; *Savings Bank of Rockville* v. *Wilcox,* 117 Conn. 188, 195, 167 A. 709. It reconciles and gives effect to all provisions of both statutes.

The duties to which we have just referred are ministerial in nature. Mandamus is the appropriate method of enforcing them. *State ex rel. Hansen* v. *Schall,* 126 Conn. 536, 543, 12 A. 2d 767.

While the facts of this particular case permit a solution which may legally be justified, it requires no great stretch of the imagination to sense difficulties under different sets of facts. For this reason

it would be wise, we believe, for the General Assembly to review the provisions of the Home Rule Act and more explicitly define the duties and powers of the officials referred to therein.

There is error, the judgment is set aside and the case is remanded with direction to overrule the demurrer and for further proceedings in accordance with this opinion.

In this opinion BROWN. C. J., and INGLIS, J., concurred.

JENNINGS, J. (dissenting). General Statutes, Cum. Sup. 1951, § 118b, may be paraphrased as follows: New Haven shall have the power to amend its charter provided such action shall not be inconsistent with or contrary to the general statutes, nor shall it be valid and effective until approved at a general election or at a special election called by a majority vote of the board of aldermen and warned and held for that purpose. To be valid, an election must follow the steps provided in a law existing at the time the election is had. *State ex rel. Morris* v. *Bulkeley,* 61 Conn. 287, 359, 23 A. 186. I do not find anything in § 118b which provides by whom or in what way an election on this petition shall be called. No right to select the date is given the petitioners. If any power is implied, the implication is that the legislative body shall decide between a general and a special election and the time when the vote should be taken. It follows that the statute is ineffective to permit a vote on this petition on November 4. I think there is no error.

BALDWIN, J. (dissenting). General Statutes, Cum. Sup. 1951, §§ 118b and 119b, give to the electors of towns, cities and boroughs the power to make,

amend, add to or replace the charters or special acts under which their local governments are established and operate. These statutes purport to prescribe the manner in which such power shall be exercised.

I am in complete agreement with the home rule principle of this legislation. These statutes, however, are so lacking in essential specific direction concerning how the broad powers given are to be exercised as to make their successful operation very uncertain and the subject of future litigation which may defeat their laudable purpose. Witness the instant case. The majority concede this by making it clear that their opinion is confined to the particular facts of this case.

Section 118b states that any action taken pursuant to its provisions shall not be valid and effective "until approved at a general election of such town, city or borough or at a special election called by a majority vote of the legislative body of such town, city or borough and warned and held for that purpose." The term "general election" means any state or municipal election, while the term "special election" means any election not a general election. General Statutes § 1030. A general election is one established by constitution, statute or special act, while a special election is one warned and held at a time designated for a specific purpose by some agency of government authorized to call it. The statutes under discussion are completely silent on the vitally important matter of who determines whether the proposed action under the statutes is to be submitted to a general or a special election and how the determination is to be made. The majority opinion assumes it to have been the intent of the legislature that, if the action under the statutes is inaugurated by a petition of the elec-

tors, the electors in the petition could designate the general election on November 4 as the time when the question would be submitted to a vote. By the same token, it could as well be assumed to have been the intent of the legislature that the electors could designate a special election and set the time when that election should be called. If that be so, then the petitioners could set a date for a special election or designate a general election so near in the future as to make it impossible for the election machinery to function properly or so distant as to make it absurd. The actual casting of ballots by the electors is often spoken of as the election. In fact, it is only a part of it. There are many important and essential preliminary steps required. If, for example, in the instant case, this vital question of the change of the charter of the city of New Haven is to be passed upon at the election on November 4, there will be a large number of electors who might be entitled to vote by absentee ballot who will be completely disenfranchised on the important issue of a fundamental change in the government of their city. An election is a process whether it be the choice of candidates for public office or the adoption of a constitution or charter or amendment thereto. The major steps in that process should be set forth clearly in the enabling legislation. Those steps must be followed to make the election a legal one. *State ex rel. Morris* v. *Bulkeley,* 61 Conn. 287, 359, 23 A. 186. The statutes under discussion are ineffective to permit a vote on this petition on November 4.

In my opinion the decision of the trial court was correct.